Garrison Grain & Lumber Company, Appellee, v. Farmers Mercantile Company, Appellant, et al., Appellees.

**EVIDENCE:** Documentary Evidence—Pleadings—Admissions—Substitution—Effect. A pleading containing material admissions may be offered and received in evidence even though such pleading has been superseded by an amended and substituted pleading.

**MECHANICS' LIEN:** Proceedings to Perfect—Unauthorized Items —Effect. A subcontractor who, with knowledge that the contract between the owner and the principal contractor has been rightfully terminated, furnishes to the contractor an item of material, and serves notice of a claim for a lien *within* the 30 days thereafter, stands on exactly the same basis as a subcontractor who serves his notice *after* the expiration of 30 days from the furnishing of allowable items.

**MECHANICS' LIEN:** Right to Lien—Payments by Owner to Contractor—Estoppel. A subcontractor who demands that certain

payments be made by the owner to the principal contractor, and who receives such payments, will not thereafter be heard to assert that such payments were unauthorized

**MECHANICS' LIEN:   Right to Lien—Payments by Owner—Crediting Contractor's Indebtedness to Another.** A building owner who is owing a building contractor a matured payment on the building may, through its managing officer, make a valid payment to said contractor by applying said mature payment on an indebtedness due from the contractor to a bank *of which said officer was also a managing officer,* even though said contractor did not request such application and had no knowledge thereof until after it was done.

**MECHANICS' LIEN:   Right to Lien—Intentionally Fraudulent Items.** Principle recognized that the right to a mechanics' lien for labor, materials, etc., is wholly lost by the insertion in said claim of intentionally fraudulent items, howsoever small.

**MECHANICS' LIEN:   Operation and Effect—Priority.** A subcontractor who, in good faith, and without knowledge of the cancellation by the owner of the contract with the principal contractor, continues to furnish material, labor, etc., is not a mere volunteer, and is entitled, *as against a subcontractor who furnished material with full knowledge of such cancellation,* to the establishment of a prior lien for his entire claim.

**MECHANICS' LIEN:   Operation and Effect—Priority.** Where all the payments made by the owner had been made before a subcontractor commenced work, and the owner had then properly terminated the contract, the right of said subcontractor to payment, though earlier in point of filing, depends upon whether, after paying all that is due to all other claimants, the owner has enough to pay said subcontractor.

**EVIDENCE:   Conclusion—Mechanics' Lien—Payment.** A contractor may competently testify that a subcontractor has not been paid.

**MECHANICS' LIEN:   Foreclosure—Interest.** An owner who has properly tendered the amount due from him is liable to interest on the amount only from the date of final decision on appeal.

**MECHANICS' LIEN:   Operation and Effect—Priority—Subcontractor Inducing Unauthorized Payments—Effect.** A subcontractor who induces the owner to make a payment to the contractor *not authorized by the contract,* and in an amount greater than the claims of all other subcontractors, and receives said

payment, will, in the adjustment of priorities, be relegated to the foot of the list of claimants.

*Appeal from Benton District Court.*—C. B. Bradshaw, Judge.

Tuesday, October 30, 1917.

This is a mechanics' lien foreclosure. From the findings made and decree entered, the Farmers Mercantile Company alone appeals.—*Modified and affirmed.*

*Tobin & Jensen,* for appellant.

*Kirkland & White, Brown & Mossman, G. W. Burnham,* and *H. L. Bryson,* for appellees.

No brief or argument for appellee Grain Company.

Salinger, J.—I. The plaintiff, the Garrison Company, and the several defendants and cross-petitioners, filed a number of sworn statements as subcontractors for mechanics' liens for alleged unpaid labor and material furnished to the principal contractor. These claims aggregate $2,260.15, or $1,165.69 in excess of the amount left in the hands of the owner, appellant, Farmers Mercantile Company. The principal contractor made default. The owner tendered into court the balance in its hands due the contractor, and asked that same be distributed among the several claimants as the court might see fit, praying that the liens be canceled and that it be discharged from further liability. The decree gives judgment to all the claimants, and holds the owner liable for $2,094.46, with interest.

| | | |
|---|---:|---:|
| The contract price is | | $5,703.90 |
| Amount used according to settlement to complete building | $ 109.44 | |
| Payment June 2, 1912 | 500.00 | |
| Payment of July 27th (unchallenged) | 1,000.00 | |
| Payment August 3d (unchallenged) | 1,000.00 | 2,609.44 |
| | | $3,094.46 |

If this were all, the owner has on hand more than enough to pay all contenders. But it paid out $1,000 on July 27th and $1,000 on August 27th. If both these are payments which it can assert, then it does not owe the principal contractor enough to pay all these claimants. The trial court allowed the payment made on July 27th and disallowed the one made on August 27th. All claims were established in full save that of Shorthill, which was reduced from $191.50 to $135.75. No one appeals save the owner. The plaintiff, the Grain Company, has filed no brief. The defendants J. D. Barr and R. E. Overman are not in the jurisdiction of the court, and no adjudication as to them was or could be attempted herein. The defendant Wenner defaulted, and, under the allegations in the cross-petition of the defendant and appellant, Wenner's lien, if any, was canceled.

1. EVIDENCE: documentary evidence: pleadings: admissions: substitution: effect.

II.   We gather that the original cross-petition contained an admission that the $2,000 was not paid under the contract, but under special arrangement between the appellant and the contractor. It is contended that this pleading cannot be considered because it was substituted for. This is so only if not put in evidence. It was put in, and so became evidence, though substituted for.

2. MECHANICS' LIEN: proceedings to perfect: unauthorized items: effect.

III.   As to the claim of the Grain Company, we are of opinion that the item of cement is not in fact the last item furnished under the contract. The Grain Company was charged with knowledge of the contract. The owner was justified by the contract in canceling. The owner did cancel. An agent of the Grain Company notified the principal contractor of the cancellation, and hence the Grain Company had notice of the can-

cellation. The cement was furnished after the contract was canceled. This works that the Grain Company did not serve notice within thirty days after furnishing the last item. It results it can have nothing which the owner did not owe the contractor.

### 3-a

**3. MECHANICS' LIEN: right to lien: payments by owner to contractor: estoppel.** We agree with the trial court that the Grain Company is estopped to claim that the $1,000 paid on July 27th should not be treated as a justified payment, even if it had given notice within thirty days after it furnished the last item. The payment was made because the Grain Company demanded it and refused to supply material unless a payment of at least $2,000 was made, and it received the money which it now urges was not rightfully paid. We think the trial court was right in holding, as against the Grain Company, that this $1,000 was not owing the contractor. See *Andrews v. Burdick*, 62 Iowa 714; *Vreeland v. Ellsworth*, 71 Iowa 347.

### 3-b

**4. MECHANICS' LIEN: right to lien: payments by owner: crediting contractor's indebtedness to another.** We are of opinion that what was done on August 27th constitutes a payment to the contractor. All said against this conclusion is that this payment was not made to the principal contractor because an officer of the owner, who was also an officer in a bank, applied that sum on a debt owing the bank by the contractor, and did so without his request and without notifying him of such application until after it had been made. We think *Knapp v. Cowell*, 77 Iowa 528, settles that what was here done constitutes a payment to the contractor.

We find that the trial court erred in holding that this payment was not so ratified by the Grain Company as to

estop it from contending that it was an unauthorized pay-
ment.   As just seen, the payment was made by an officer
of the Grain Company to help a bank of which he was also
an officer.   The Grain Company must, as between it and
the owner, be relegated for collection to the contract price
minus the conceded reductions, plus $2,000, paid on July
27th and on August 27th.   That is to say, as to the Grain
Company the sum due the contractor is $1,094.46.   It can-
not have more than that.   It remains to be seen whether
it may have so much as that.

IV.   Tyler, claiming $207.77, filed claim
first, and, if entitled to anything, has pri-
ority, and is entitled to have full satisfac-
tion, even if that exhaust the fund.   See
Code Sec. 3095, and *Lindsay v. Zoeckler,*
128 Iowa 558.   The position of appellant is that the court
should have estopped Tyler from claiming any lien at all
"on account of his evidently trumped-up claim and his dis-
honesty of purpose."   This is based upon the assertion that
Tyler's statement contains a fictitious item of $1.00 for put-
ting in a sill for a rear door, in that Tyler claims he did
this on September 23d; that he did no work on that day, or
that, if he did, it was gratuitous and voluntary, and can-
not be included in his claim; that, with this item excluded,
the last work performed for which Tyler is entitled to a
lien was done about August 21st; and that, therefore, Ty-
ler failed to serve notice within 30 days.   It is further con-
tended that the date September 23d was inserted in the
statement after it had been completed and presented to
appellant, about August 26th or 27th, and it given to under-
stand that the work contracted for by Tyler with the prin-
cipal contractor had then been completed; that the amount
exhibited at this time was for the same amount which is
claimed now, to wit, $207.77.   The amount of the item for

5. MECHANICS'
LIEN: right to
lien: inten-
tionally fraud-
ulent items.

putting in the sill is, to be sure, trifling in itself, and as part of a $207 claim. But, of course, that fact will not avail if its insertion was a fraudulent one. So the inquiry at this point narrows to whether Tyler perpetrated an intentional fraud. If he did, he can assert no lien. *Palmer v. McGinness,* 127 Iowa 118; *Nancolas v. Hitaffer,* 136 Iowa 341, at 345; *Stubbs v. Clarinda, C. S. & S. W. R. Co.,* 65 Iowa 513; 27 Cyc. 203. And see *Bangs v. Berg,* 82 Iowa 350; *Green Bay Lbr. Co. v. Miller,* 98 Iowa 468; *Hug v. Hintrager,* 80 Iowa 359. The time at which the sill was actually put in is in dispute. The importance of settling the dispute lies in the fact that, if the sill was actually put in on September 23d, it would go far to disprove all fraudulent intent, and to avoid the penalty for such intent to which we have referred.

Taking into consideration the state of the evidence on when the sill was in fact put in, and that forfeiture for fraud of what was truly earned is sought, we conclude that, upon all the evidence, such fraud is not established.

4-b

If it be material, we find that, though Tyler was guilty of no fraud, the last item claimed for by him was not in fact the last item, and that he must be dealt with as one who did not serve notice within the thirty days. See *Wheelock v. Hull,* 124 Iowa 752; *Jones & Magee Lbr. Co. v. Murphy,* 64 Iowa 165; *Chicago Lbr. & Coal Co. v. Garmer,* 132 Iowa 282; *Stewart v. Wright,* 52 Iowa 335; *Parker v. Scott,* 82 Iowa 266, at 271; *Iowa Stone Co. v. Crissman,* 112 Iowa 122; *Page v. Grant,* 127 Iowa 249; *Green Bay Lbr. Co. v. Thomas,* 106 Iowa 154.

V. Appellant contends that items of labor charged for by Murphy, Freeman and Winders were, if done, not done under the contract, and were voluntary and gratui-

6. MECHANICS' LIEN: operation and effect: priority.

tous, because performed after the contract had been canceled, under authority given by the contract. We have held as to the Grain Company that it was affected by this cancellation. The argument as to these others divides into the proposition: (1) That these three claimants were bound by the contract between appellant and the principal contractor, and therefore by its provision that the owner had the right to cancel; (2) that the owner did cancel before the said items of work were done, and the cancellation was justified by the contract; (3) that these claimants were notified of the cancellation before they did this work; and (4) that no notice was required because claimants knew that the owner had the contract right to cancel.

It is true that these subcontractors were bound to know that the contract gave such right. *Blanding v. Davenport, I. & D. R. Co.,* 88 Iowa 225. We may assume, for present purposes, that the owner canceled, and was justified by the contract in so doing. It is true that the contract does not require notice to be given of such cancellation. But does that go beyond dispensing with notice to the principal contractor? And does the fact that he need not be notified establish that, if these claimants continued to work without notice or knowledge of the cancellation, they became volunteers, and must be denied recovery on that account? We do not think that results from the right to cancel without notice to the principal contractor. Murphy testifies that the principal contractor told him to do this item of work, and that Murphy did so without knowing the contract had been canceled. There is no affirmative evidence of this kind for Freeman and Winders. On the other hand, the claim that they were notified of the cancellation is not, as is claimed, established by the evidence of M. J. Collins. All he says is that, on October 12th, he "sent a notice to Mr. Inman (the principal contractor) containing

a memorandum from the architect and had knowledge of that memoranda from the architect on Inman that the contract was ended, I went to the building and notified the workmen there that the contract had been terminated and whatever they did was at their own responsibility  *  *  * I notified Denman, the painter, of this."

This lacks two elements to make Murphy, Winders and Freeman volunteers: the time when it was said, and a statement that, when said, these three were "workmen there." We cannot hold that the last item charged for by these three was volunteer work, and that on that account they cannot recover therefor, nor that they gave notice after thirty days from the last item because the last item claimed for was not lienable.

VI. Murphy filed next after the Grain

**7. MECHANICS' LIEN: operation and effect: priority.** Company. All the payments to Inman had been made by appellant before Murphy started to work, and there were no payments thereafter. The rights of Murphy, then, depend upon whether, after paying out all that is due all the other claimants, the owner has enough to pay Murphy, who filed earlier.

Following Murphy in filing come, respectively, Winders and Freeman. If it be

**8. EVIDENCE: conclusion: mechanics' lien: payment.** material, Winders did not and Freeman did serve notice within the thirty days. As to both, appellant urges that there is no competent evidence that their claim is unpaid. The same point is made as to Shorthill. But Inman said, though under objection, including that it was incompetent and hearsay, that none of these claims had been paid, and the prices were reasonable. This is not open to the objections. Inman is the principal contractor, and employed these claimants. If they are not paid, he owes them. It follows that his testimony is com-

petent. The witness is the debtor, and may admit competently the fact that the debt is not paid.

VII. Denman follows Freeman in filing. He gave no notice. As to him, as well as appellees other than the Grain Company, it is insisted that they may have no relief, because they furnished after they knew the contract had been canceled, and that they were bound to know, even if not notified of said cancellation. We have disposed of this point.

VIII. The Shorthill Company filed last. It did not give notice within the thirty days. It was not allowed all it claimed, but, as it has not appealed, we cannot enlarge its allowance. The point of failure to prove nonpayment has been disposed of.

9. MECHANICS' LIEN: foreclosure: interest.

IX. No interest should be allowed earlier than from the filing of this opinion, because appellant has tendered to all all that it should pay. *Young v. Young,* 179 Iowa 1259.

10. MECHANICS' LIEN: operation and effect: priority: subcontractor inducing unauthorized payments: effect.

X. The foregoing indicates that the decree below must be affirmed, but with the following modifications:

  a. Tyler, having priority, will be paid .......... $207.77

  b. As to the Grain Company, its act helped to diminish by $2,000 the fund that would else have been available for the appellees other than Tyler. Were it not for that fact, an estoppel with which these others are not affected, it would be entitled to exhaust what remains after satisfying Tyler, or .................... 886.67·

  c. Because this payment was not according to contract, and the others are not estopped, out of this there should be paid:

  Murphy ...........................$ 18.50

| | | |
|---|---|---|
| Winders | 14.40 | |
| Freeman | 11.92 | |
| Denman | 49.50 | |
| Shorthill | 135.75 | 230.07 |

Leaving to the Grain Company ......          $656.60

Of the costs here and below, appellant will pay one third and appellee Grain Company two thirds.—*Modified and affirmed.*

GAYNOR, C. J., EVANS and STEVENS, JJ., concur.