IVAN BANKS, appellee, v. CLARENCE C. CARRELL et ux., appellants; KEOKUK LOAN & BUILDING ASSOCIATION, a corporation, defendant.

No. 47670.

(Reported in 43 N.W.2d 142)

June 13, 1950.

McManus & McManus, of Keokuk, for appellants.

J. Andy Zenge, Jr., of Canton, Missouri, and Charles P. Beard, of Keokuk, for appellee.

Mantz, J.—Plaintiff's action is to foreclose a mechanic's lien alleged to exist against certain real estate of defendants in Keokuk, Iowa, and to recover certain sums claimed to be due

thereunder. Defendants admit that plaintiff performed certain services and furnished material for them on the premises but deny that the services were rendered as claimed and further allege that the amounts sought to be collected were in violation of and in excess of that allowed by the Office of Price Administration (OPA) regulations. The court found for the plaintiff, foreclosing such mechanic's lien, and allowed recovery substantially as claimed by plaintiff. Another defendant, Keokuk Loan & Building Association, was conceded to be the holder of a first lien mortgage on the property involved. The court so found and it takes no part in these proceedings. Defendants Carrell have appealed.

I. On June 13, 1946, the defendants owned and lived upon certain real estate in Keokuk, Iowa. At that time there existed on said premises a hillside adjoining the residence of defendants. On that date and on or about July 1, 1946, the plaintiff and defendants entered into an oral agreement or arrangement whereby the former agreed to level off and slope said hillside. Pursuant to said agreement plaintiff began said work, furnishing labor, materials and equipment, and completed it on or about September 14, 1946. On December 4, 1946, plaintiff filed a mechanic's lien against defendants' premises.

In this litigation both parties agree that the work done by plaintiff for defendants was under and by virtue of an oral agreement. The nature of such agreement is one of the matters in dispute. Plaintiff contends that under said oral agreement he was to do the work, furnish labor, materials, and equipment, and was to be paid an agreed amount therefor. He claims that in doing same he was an independent contractor. On the other hand, defendants claim that the agreement was for the rental of the equipment used in making the improvement, and further, that the prices charged by plaintiff were in excess of those allowed or permitted by the OPA regulations and they offered and tendered to the plaintiff the sum of $400 and allege that said amount is all that plaintiff is entitled to. They further contend that a large part of the work done by plaintiff was caused by the negligent manner in which he carried on the work. The court found in favor of plaintiff on that issue. The question before us is, Does the evidence sustain such findings?

We find in the record ample evidence to sustain the trial court in such particulars. As a matter of fact, defendants admit that whatever was done by the plaintiff was under an oral arrangement. Defendant Clarence C. Carrell testified that he wanted the work done and that plaintiff said that he could do it. Carrell further said that he knew nothing as to the nature or condition of the hillside; further, that he had not the slightest direct knowledge of what caused the hillside to slide. The essence of the testimony of defendants is that they wanted the hillside, extending from their home to the River Road, graded and leveled off and that after some discussion with plaintiff it was agreed that he should go ahead and do such work.

One of the errors urged was the failure of the trial court to take judicial notice of the Emergency Price Control Act and regulations and in holding that defendants failed to prove regulation No. 134.

The issue was raised in an amendment filed June 1, 1949, and as defendants, to a considerable extent, base their defense thereon, we set it out in full:

"AMENDMENT TO ANSWER.

"Come now Clarence C. Carrell and Mildred P. Carrell, defendants above named, and with leave of court amend their answer hereinbefore filed in the following particular, to wit: By inserting after paragraph 10 on the third page thereof the following: 11. For further answer defendants aver that the amounts charged by plaintiff for equipment as set forth in 'Exhibit A' are in excess of and in violation of the maximum charges promulgated by the Office of Price Administration under the Emergency Price Control Act of 1942 then in force and effect."

No pleading was made by plaintiff to such amendment.

II. We will first consider the claim of defendants that the failure of plaintiff to reply to the above-quoted amendment setting up an affirmative defense was an admission thereof and dispensed with proof. The defendants rely for this claim on rule 102, Rules of Civil Procedure. Such rule is as follows: "Every fact pleaded and not denied in a subsequent pleading, as permitted by these rules, shall be deemed admitted, except

allegations of value or amount of damage. Allegations of a reply shall be deemed denied by operation of law."

Thus, one of the questions involved is whether the amendment alleging a violation of OPA regulations sets up an affirmative defense which under the rule requires a reply. The trial court ruled that no reply was necessary in that the allegations of the amendment as set out were conclusions of the pleader. In support of such ruling, the trial court relied upon our holding in the case of Shalla v. Shalla, 237 Iowa 752, 23 N.W.2d 814. We question whether that case, under its record, has application here. The amendment in this case set up as a defense to plaintiff's claim that certain prices charged therein violated the OPA regulations. If, as found by the trial court, the amendment pleaded a legal conclusion, it would seem that the rule was not applicable.

In the trial of the case defendants introduced evidence to show the OPA regulations and their applicability to the issue so raised. After hearing such evidence the trial court held the proof of such claimed violations insufficient.

In a later division of this opinion we hold that the regulations of the OPA were properly before the court. We so held following rather extended arguments upon that point by the parties herein. In view of the record made and the procedure followed during the trial, and the evidence introduced, we find it unnecessary to pass upon the question as to whether a reply to the amendment was required under the rule.

Even assuming a reply was required under the rule, we hold there is another sufficient reason why the defendants' claim in respect to the failure of plaintiff to reply to the amendment of defendants has no merit. We do not find such proposition raised in the trial court. Hence, defendants may not, on appeal, take advantage of the absence of a formal denial of such allegations. Thoman v. Harris, 236 Iowa 889, 20 N.W.2d 22; citing Independent Van & Storage Co. v. Iowa Mercantile Co., 189 Iowa 874, 179 N.W. 157. See also Gregory v. Bowlsby, 126 Iowa 588, 102 N.W. 517; Medland v. Walker, 96 Iowa 175, 64 N.W. 797.

After defendants filed their amendment they proceeded to trial, and the issues were largely along the line of the contract

involved, the prices charged and the regulations of the OPA.

When plaintiff rested, the defendants moved to dismiss the action for the reason that there was no evidence that the prices alleged and proved by plaintiff for the equipment and other items involved complied or conformed with the applicable prices promulgated by the OPA. The motion was overruled. Thereupon defendants proceeded with their evidence. When defendants rested, they renewed their motion to dismiss, said motion being substantially the same as their first motion. This was denied by the court.

III. The petition was filed December 24, 1947. Defendants filed answer May 26, 1948, and the amendment was filed June 1, 1949. The court, in its findings of fact, ruled that the burden was upon defendants to establish their pleaded affirmative defense that the prices charged violated the OPA regulations. Defendants sought to establish such defense by oral testimony and also by an offer of the regulations, same being Exhibit 10. That exhibit purports to set out the regulations issued by the government agency having the enforcement of the OPA. The trial court held that there was a failure on the part of defendants to properly place said regulations in evidence. This ruling is set forth as error by the defendants. The offer was made by witnesses, who testified as to such rules and regulations. Also, by an offer of said Exhibit 10. This exhibit sets forth the regulations of the OPA dealing with price control. Defendants claim that such regulations issued pursuant to congressional enactment have application to the matter at issue between defendants and plaintiff, and that the court should have taken judicial notice thereof.

We are of the opinion that the OPA regulations were properly called to the attention of the court and that the court could properly take judicial notice thereof. The OPA was a congressional enactment under a war measure—Emergency Price Control Act of 1942 (Title 50 U. S. C. A. Appendix, sections 902 to 942, inclusive). The act was in effect at the time the work was done and the materials furnished by plaintiff. We think that our holding in the case of State ex rel. Bierring v. Swearingen, 237 Iowa 1031, 22 N.W.2d 809, with the cases therein cited, is controlling here. There we held that the court

could properly take judicial notice of rules promulgated as provided by statute. While the issue there was as to a rule of one of the state departments of Iowa, still we cannot see why the same rule should not apply to rules promulgated by federal departments issued pursuant to congressional direction. We hold that said Exhibit 10 was properly before the court and its provisions were entitled to consideration so far as applicable.

The question then presented is, Did the contract or contracts, and the prices charged by the plaintiff thereunder, come under said OPA regulations?

The trial court held that it did not apply. Said Exhibit 10, in setting forth the various applications, likewise sets forth situations where it does not apply. Plaintiff calls attention to one of said regulations which is as follows: "(iii) Neither of the foregoing definitions embrace, nor does this regulation apply to, a situation wherein the party furnishing to or using for another party any construction or road maintenance equipment is, pursuant to the terms of a written or provable contract and according to the laws of the State where the work is to be performed, an independent contractor, liable to the other contracting party only for a particular result in respect to such work and is not subject to the control of such other party as to the means or methods by which such result is to be accomplished."

It will be noted that they do not apply where the work to be performed is done by an independent contractor, under the conditions above set forth. The question then is, Was plaintiff an independent contractor contracting to do the work, furnishing labor, equipment, and material, not subject to control by defendants as to means and methods and obligated to defendants only as to results? The trial court, in effect, held that plaintiff was an independent contractor and liable only to defendants as to the results. Such holding was a finding of fact. See In re Estate of Amond, 203 Iowa 306, 210 N.W. 923; Meredith Publishing Co. v. Iowa Employment Sec. Comm., 232 Iowa 666, 6 N.W.2d 6.

While there was some conflict in the evidence we think that the record fully sustains the trial court.

The defendants owned certain real estate upon which they maintained a residence; situated thereon was a raised spot or hillside which they desired to have leveled off; this called for the removal of a considerable quantity of earth; plaintiff did that kind of work; he met with the defendants, and the nature of the work to be done was discussed; it was agreed about June 13, 1946, that plaintiff would use certain earth moving machinery and that this would cost defendants $12.50 per hour; plaintiff started said work and there was some delay due to a breaking down of some of the machinery; heavy rains ensued, cracks developed, and the hill began to slide causing the dirt to roll into a highway below; the parties further conferred with reference to the situation and defendants desired plaintiff to complete the grade and construct a concrete abutment, or retaining wall, to hold the earth and asked plaintiff what such would cost; plaintiff advised that due to the nature of the work he could give them no definite figure as to such cost but that the only way he would proceed was to do the job on a cost plus basis of twenty per cent, and advised that the tractor would cost $12.50 per hour, a shovel a like figure, with labor probably $1.05 or $1.06 per hour; following this the defendants told plaintiff to go ahead and complete the work and to do all things necessary, and authorized plaintiff to purchase all necessary material. The record shows that plaintiff proceeded with the work of moving earth, stone, water pockets, and constructed a retaining wall, keeping an itemized account thereof and completed the work on September 14, 1946. Nothing has been paid on this account, however, defendants did tender to plaintiff $400 in full for the entire improvement.

In arguing to sustain their claim as to the illegality of plaintiff's charges, defendants claim that the contract was for a rental of the machinery and other items used in the work done. Defendants argued that there was an over-all price of the job contemplated between the parties before the work was done. As witnesses, defendants denied that there was any agreement with plaintiff as to doing the work on a cost plus basis. The record fails to sustain such claim and the situation and the circumstances were such as to negative it. We will set forth from the

record a part of plaintiff's testimony showing the nature of the work performed. He said:

"I started work on the afternoon of June 13 and worked about 2½ hours when the tractor dropped down in a soft spot. We had difficulty getting it out and broke a part. This had to be repaired and within the next few days about ten inches of rain fell and we didn't work. On the second day after we resumed work I noticed some cracks in the base of the hill and the next day the hill began to slide. I sent for Mr. Carrell and showed him what was going on. During the course of the work and before any slide occurred on the hillside, I suggested to Mr. Carrell that they take out some logs laying there on the hill so they would not rot under there and cause the ground to drop down and Mr. Carrell agreed that this should be done. After the slide occurred I suggested digging a trench to drain a pond of water that had formed up on the hillside and Mr. Carrell agreed that this should be done and instructed me to go ahead. During the course of the work we uncovered a spring in the rock up on the hillside that necessitated additional tiling to carry the water off the hillside. We started digging and ran into a lot of boulders. We had to abandon the work as the hill kept sliding. I had several conversations with Mr. Carrell and he finally asked me what it would cost to straighten it up. He said he would like to have the hill graded down to a proper grade and an abutment put in to hold it. I told him that would cost quite a. lot of money, but he said that when he started something he finished it. I told him that I had no idea what it would cost and that the only way I could figure the job would be on a cost plus basis—that is, figure the entire cost and add 20%. I told him it would take sand, rock, cement, steel, men, tractors, shovels and trucks, and that the tractor would cost $12.50 per hour and the shovel $12.50 per hour. I told him the labor would probably cost $1.05 or $1.06 per hour. We had some talk about Ralph Wright doing the concrete work but Carrell finally told me to go ahead and do everything. He told me to go ahead and buy the materials needed wherever I wished."·

He further stated that defendants were upon the ground

a number of times and made no objections to the work being done.

The court found for plaintiff as to the nature, extent and cost of the services rendered by plaintiff, and we hold the record fully sustains such finding.

We hold that under the facts in this case the plaintiff was an independent contractor and that as such he entered into an oral agreement to do the work and make the improvement on the property of defendants. Being an independent contractor, he was not within the provisions of the regulations promulgated by the OPA.

As to who is an independent contractor has been considered by our courts in many cases. In the case of Manton v. Stevens & Co., 170 Iowa 495, 153 N.W. 87, speaking of such subject, we said: "An independent contractor, generally speaking, is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of his work."

In Pace v. Appanoose County, 184 Iowa 498, 509, 168 N.W. 916, 919, the issue was the distinction between an employee and an independent contractor. Therein the court (Ladd, J.) quoted from Thompson on Negligence, Second Ed., section 629, wherein the author states: "The test lies in the question whether the contract reserves to the proprietor the power of control over the employee." See also Shearman & Redfield on Negligence, Sixth Ed., section 166.

In the case of Norton v. Day Coal Co., 192 Iowa 160, 167, 180 N.W. 905, 908, this court said: "It is elementary doctrine, and it would fill many pages to cite the support it has, that one is not an employee if he may choose his own method of working—the mode and manner of doing the work." While this was a compensation case, yet the discussion covers a wide field and deals with the question as to when and under what circumstances the relation of an independent contractor exists. It cites and reviews many of our cases on that subject; also many from other jurisdictions. Storm v. Thompson, 185 Iowa 309, 313, 170 N.W. 403, 404, 20 A. L. R. 658. Therein this court (Weaver, J.) said: "The true test of a contractor would seem

to be that he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished."

In the case of Overhouser v. American Cereal Co., 118 Iowa 417, 419, 92 N.W. 74, 75, this court (Ladd, J.), speaking of the distinction between an employee and an independent contractor, said:

"The test oftenest resorted to in such cases is the ascertainment of whether the employe represents the master as to the result of the work or only as to the means. If only as to the result, and in the employment of the means he acts entirely independent of the master, he must be regarded as an independent contractor."

The court held that this matter was a proper issue to be submitted to the jury. See also same case (second appeal) 128 Iowa 580, 105 N.W. 113. On the same matter see Arthur v. Marble Rock Consol. Sch. Dist., 209 Iowa 280, 228 N.W. 70, 66 A. L. R. 718; Lind v. Eddy, 232 Iowa 1328, 6 N.W.2d 427, 146 A. L. R. 695; In re Estate of Amond, supra. See annotation (Nichols v. Hubbell) 19 A. L. R. 221, 226; Svoboda v. Western Fuel Co., 195 Iowa 1137, 193 N.W. 406; Burns v. Eno, 213 Iowa 881, 240 N.W. 209; 27 Am. Jur., Independent Contractors, section 27.

In the case of In re Estate of Amond, supra, at page 308 of 203 Iowa, page 924 of 210 N.W., this court (Stevens, J.) said, in speaking of the distinction as between an employee or independent contractor:

"Looking to our own cases, we find that the test quite uniformly applied in this state is: Does the employee represent the master as to the result of the work only, or as to the means by which the result is obtained? If as to the result, and in the employment of the means he acts entirely independently of the master, he must be regarded as an independent contractor. Overhouser v. American Cereal Co., 118 Iowa 417. In all of the cases decided by this court, particular emphasis has been given to the right of the employer to dictate and control the

manner, means, and details of performing the services." (Citing numerous cases from this and other jurisdictions.)

Defendants had certain work to be done—to level and slope the hillside—to get rid of ridges, logs and rock. This called for supervision by one who knew how this desired result could be achieved; it took heavy machinery—tractors, bulldozers, earth lifters, and kindred equipment; such called for experienced and competent operators.

The record shows beyond contradiction that the means and method of doing this work was in the hands of the plaintiff. In the work unusual conditions and unforeseen obstacles were encountered—ten inches of rain—earth slides—large embedded rock—fallen logs—water pockets and drains. It is reasonable to conclude that plaintiff, a man experienced in such work and knowing its hazards, would not be willing to undertake such a job under the conditions claimed by defendants. Further, it is a matter of common knowledge that during the war period construction work such as we have here was frequently let on a cost plus basis.

Under the record, the court did not err in finding that plaintiff was an independent contractor.

The defendants claimed that much of the work which plaintiff did was the result of his own negligence. The trial court found adversely and we think properly.

■ IV. The final question involved relates to the allowance by the court of the item of interest on the amount which the court held defendants were owing plaintiff. In the decree and judgment, the court awarded plaintiff judgment against defendants for the sum of $4092.25 with five per cent interest from September 14, 1946. Defendants contended that such interest was not allowable from said date, in that the claim upon which it was based was disputed and unliquidated at that time.

We hold that the allowance of interest by the court was proper. In this case, the court properly found that plaintiff and defendants entered into an oral agreement as to the work plaintiff was to do and the compensation he was to receive from defendants. There is no dispute but that the work was completed by plaintiff on September 14, 1946. The amounts set forth in the statement attached to the mechanic's lien were

clearly stated and we do not find defendants disputing their accuracy or claiming that there was any error. They simply claim that they did not owe them, seeking to avoid payment by invoking some of the provisions of the OPA regulations and by disputing the arrangement or agreement under which the work was done. The court held adversely to them on both points, and we think properly so. More than three years had elapsed between the filing of the mechanic's lien and the judgment. A large part of the amount sued for was for wages paid employees and for materials furnished. To deny interest on such items for a period of over three years does not appeal to us as being equitable. We think, too, that under the statute the allowance was proper. (Section 535.2, Code of 1950.) Bridenstine v. Iowa City Electric Ry. Co., 181 Iowa 1124, 165 N.W. 435; Collins v. Gleason Coal Co., 140 Iowa 114, 115 N.W. 497, 18 L. R. A., N. S., 736; Moore v. Fryman, 154 Iowa 534, 134 N.W. 534.

In the case of Mote v. Chicago & N. W. R. Co., 27 Iowa 22, 28, 1 Am. Rep. 212, 214, a suit was brought against the carrier for the loss of a traveler's trunk. Recovery was allowed, and on the question of interest the court held that such could be allowed from date of the loss, and in so holding this court said: "It was formerly a general rule, that interest could not be recovered on unliquidated damages. But this rule has been much modified by modern decisions." See Necedah Mfg. Corp. v. Juneau County, 206 Wis. 316, 237 N.W. 277; also annotation 96 A. L. R. at page 18.

The matter of interest-allowance was considered in Olson v. Shuler, 203 Iowa 518, 522, 210 N.W. 453, 454. Therein we said:

"While it is true that these cases [cited] are tort cases, at the same time logic and, to our minds, better reasoning warrant us in saying that the same rule should be applied in the present case. The equity is that, where one owes a debt and fails to pay it, and the holder is compelled to litigate, he is entitled to interest on the amount then due. Such we hold the rule to be."

See also Enslow & Son v. Ennis, 155 Iowa 266, 135 N.W. 1105, and Sullivan v. Nicoulin, 113 Iowa 76, 84 N.W. 978.— Affirmed.

All JUSTICES concur.