LEO W. FARRINGTON, d/b/a FARRINGTON CONSTRUCTION COMPANY, appellant, v. R. J. FREEMAN et ux., appellees.

No. 49841.

(Reported in 99 N.W.2d 388)

November 17, 1959.

Ries & Osmundson, of Iowa City, for appellant.

Jack C. White, of Iowa City, for appellees.

PETERSON, J.—*Plaintiff is a building contractor. On October* 3, 1956, he entered into a written contract with defendant R. J. Freeman for the erection of a home at a price of $15,900. He promptly proceeded to erect the home. In March 1957 defendants moved into the basement. By August 1957 plaintiff had finished the house, and defendants occupied the full home. They had paid $12,500 on the contract. In August of 1957 they refused to pay any more, claiming there were certain defects in the house for which they should have credit, and for which they filed a counterclaim in this action. On January 2, 1958, plaintiff filed a mechanic's lien. The trial court foreclosed the mechanic's lien, but held plaintiff owed defendants $843 on their counterclaim. Plaintiff has appealed from this allowance.

Appellant urges three grounds as basis for reversal of the trial court's decision as to the counterclaim:

1. If the terms of the contract are established by a preponderance of the evidence and there is shown a substantial performance of its terms the builder is entitled to the contract price plus extras, less reasonable sums for small items not furnished and reasonable damages on account of slight defects in performance.

2. The plaintiff's denial of all of the allegations of a counterclaim puts the burden of proving every fact essential to recovery upon the defendant.

3. The court erred in not allowing plaintiff interest from March 1957.

I. The account between the parties as alleged in plaintiff's petition, and which items are not in dispute, is as follows:

DEBITS TO DEFENDANTS.

| | | |
|---|---|---|
| 1. | Contract price | $15,900.00 |
| 2. | Agreed difference on Thermopane windows | 71.71 |

| | | |
|---|---|---:|
| 3. | Extra hardware | 53.82 |
| 4. | Rear porch railing | 49.60 |
| 5. | Aluminum combination windows | 21.00 |
| | TOTAL | $16,096.13 |

CREDITS TO DEFENDANTS.

| | | |
|---|---|---:|
| 1. | Paid on contract | $12,500.00 |
| 2. | On electrical fixtures | 75.00 |
| 3. | On combination doors | 67.00 |
| | Total credits | $12,642.00 |
| | Balance unpaid | $3,454.13 |

This is the amount for which plaintiff filed lien and for which he started foreclosure action on March 25, 1958.

The only controversy between the parties is whether or not allowances should be made to defendants as to some defects and omissions alleged by them in their counterclaim, and the amount of such allowances.

Defendants did not offer any witnesses in support of their items in the counterclaim except a real-estate man as to the over-all value of the property and a merchant who was a dealer for what is known as Rusco windows.

Plaintiff tendered the testimony of another contractor as to the defective items claimed by defendants, Mr. Roland Smith, who was an inspector and appraiser for the Veterans Administration, and Mr. and Mrs. Vernon Rodgers, who had purchased the home from defendants some months prior to the action for $26,500. Fortunately we have the benefit of some disinterested and neutral witnesses outside of plaintiff and defendants.

We will list the items claimed by defendants under their counterclaim, together with the testimony of Mr. Roland Smith and Mr. and Mrs. Rodgers as to such items. Mr. Smith qualified himself by testifying that he had inspected and appraised approximately 270 new homes erected under the provisions of the Veterans Administration. Mr. Freeman was the only witness as to the value of the defects or omissions claimed by him. He was an insurance man and did not qualify himself as to the com-

petence of his evidence concerning the value of the defective or omitted items. However, this was an equity action and the trial court admitted his testimony and, in fact, it was admitted without any objection on the part of plaintiff's counsel as to its competency or as to the competency of Mr. Freeman. The items claimed by Mr. Freeman under the counterclaim and the testimony of Mr. Roland Smith and Mr. and Mrs. Rodgers as to such items are as follows:

1. Repairs needed to the wall and ceiling in the living room; $150. As to this item Mr. Smith testified: "In the living room ceiling and walls it is hard to detect any trouble there * * *."

2. Mr. Freeman testified he spent $7 for knobs on the cupboard. Plaintiff contends this item was included in his hardware allowance of $75.

3. Cost of correcting the kitchen linoleum; $250. Mr. Smith testified: "In the kitchen, if you got down on your hands and knees, and got a light just right you could see a little indenture there at one plywood joint that was adjacent to a linoleum seam."

4. Cost of repairing and properly fitting the windows; $30. Mr. Smith testified: "There could be some slight adjustment made to the windows, but not any of them are what you would call really bad."

5. Cost in connection with properly fitting the basement door; $50. As to this item Mr. Smith testified: "The basement door to the outside looked like a proper installation to me. It fit properly, and opened and closed."

6. A new sink and lavatory would cost $110. Mr. Smith testified: "There are quite a few cracks from the disposal unit. They aren't clear across the bottom, but they are there. In the lavatory sink in the bathroom, I found two very minute, could-be sand pits, or something. You'd have to use a knife blade to know they are there, whether they are black specks, but there are a couple of very small ones there." With reference to this item plaintiff contends the sink was in perfect condition when the plumber installed it and when he turned it over to the defendants. He claims if there were any cracks they occurred through actions of defendants. In connection with this it should be noted that while defendants moved into the basement in March 1957,

they never raised any question concerning the kitchen sink until August. Mr. and Mrs. Rodgers, the purchasers of the house from defendants, testified: "We are satisfied with the work, the materials, and the way the house is constructed and have no complaints about anything to be done." This testimony applies to all defects claimed, and supports all the testimony of Mr. Smith.

7. Cost of mirror and towel bars not furnished by plaintiff; $60. Plaintiff admits this item is correct and we will make an allowance for it.

8. The cost of Rusco windows; $646. This figure is supported by Mr. Johnson, the Rusco dealer. Plaintiff was obligated to install Rusco windows under the terms of his contract. He installed aluminum windows of another type. He claims defendants approved of this change, but defendants deny such approval. Plaintiff testified the windows installed by him cost $510. Defendants should, therefore, be allowed a credit of $136, the difference between the cost of Rusco windows and the aluminum windows.

9. Cost of installing cement steps and walk on the south side of the house; $200. Plaintiff denies this was a part of the contract. After defendants sold the house to Mr. and Mrs. Rodgers the steps and walk were installed by plaintiff for Mr. and Mrs. Rodgers and they paid for it; defendants suffered no loss as to this item.

On the basis of the above analysis defendants should have credit for $196 under the counterclaim.

█ Under a contract such as between the parties to this action, where substantial performance has been proven by the builder, he is entitled to his contract price less deduction for the value of any defects in performance. Stratmeyer v. Hoyt, 189 Iowa 85, 174 N.W. 243; Lautenbach v. Meredith, 240 Iowa 166, 172, 35 N.W.2d 870; Huffman v. Hill, 245 Iowa 935, 65 N.W.2d 205; Peterman v. Hardenbergh, 250 Iowa 931, 97 N.W.2d 152; Littell v. Webster County, 152 Iowa 206, 131 N.W. 691, 132 N.W. 426; Hayes v. Ramsey, 205 Iowa 167, 217 N.W. 808; Miller v. Gray, 205 Iowa 1305, 217 N.W. 228; Garrison Grain & Lumber Co. v. Farmers' Mercantile Co., 181 Iowa 568, 164 N.W. 791.

█ The policy or theory of substantial performance by the contractor, and deductions as to the reasonable value of any

defects or omissions, has been established in many decisions of this court. In the rather early case (1911) of Littell v. Webster County, supra, "substantial performance" was defined at page 215 of 152 Iowa: " 'Substantial performance', as defined by the cases, permits only such omissions or deviations from the contract as are inadvertent or unintentional, are not due to bad faith, do not impair the structure as a whole, are remediable without doing material damage to other parts of the building in tearing down and reconstructing, and may without injustice be compensated for by deductions from the contract price. So much is allowed in building contracts because of the hardship to the contractor if slight, unintentional deviations should bar his recovery."

As a general legal proposition the burden rested on plaintiff to prove the performance of the contract made by him. Huffman v. Hill, Miller v. Gray and Hayes v. Ramsey, all supra; 57 C. J. S., Mechanics' Liens, section 308f, page 963; 36 Am. Jur., Mechanics' Liens, section 235, page 150.

We have reaffirmed the policy of substantial performance in two recent cases. Huffman v. Hill, supra (1954), and Peterman v. Hardenbergh, supra (1959). In the Huffman case this court stated at page 938 of 245 Iowa: "However, a technical, exact and perfect performance is not necessary. Substantial performance is all that is required. Where there is substantial performance the builder is entitled to the contract price less reasonable damages on account of slight defects in performance."

Since the items we are approving as to the counterclaim are in fact by admission or testimony of plaintiff, the second alleged error assigned by plaintiff is ineffective.

II. Interest was established by the trial court in favor of plaintiff from the date of the judgment. Appellant contends it should have been established from March 1957.

We have established in many decisions that as to unliquidated claims interest is to be computed from the date of the judgment, when the claim becomes liquidated. This refers particularly to tort actions. Under certain conditions we have somewhat relaxed this rule. Collins v. Gleason Coal Co., 140 Iowa 114, 115 N.W. 497, 118 N.W. 36, 18 L. R. A., N. S., 736; Moore

v. Fryman, 154 Iowa 534, 134 N.W. 534; Bridenstine v. Iowa City Electric R. Co., 181 Iowa 1124, 165 N.W. 435.

In the case at bar plaintiff's claim has reference to the balance due under a contract. Even though the counterclaim for defects or omissions is in the nature of an unliquidated claim, this does not convert the claim of plaintiff into an unliquidated claim. Knutson v. Lasher, 219 Minn. 594, 18 N.W.2d 688; Banks v. Carrell, 241 Iowa 786, 43 N.W.2d 142; Maslow Cooperage Corp. v. Weeks Pickle Co., 270 Wis. 179, 70 N.W.2d 577; 47 C. J. S., Interest, section 19(b).

The rule which has been approved in Minnesota, Wisconsin and Iowa is stated in 47 C. J. S., Interest, section 19(b), page 31, as follows: "Ordinarily, where the amount of a demand is sufficiently certain to justify the allowance of interest thereon, the existence of a set-off, counterclaim, or cross claim which is unliquidated will not prevent the recovery of interest on the balance of the demand found due from the time it became due."

Plaintiff testified he finished the house in August 1957, and at that time defendants acquired full possession of the home.

The written contract between the parties provides a schedule of payments, and the following as to any unpaid balance: "Final payment shall be due 10 days after completion of the work and the contract fully performed."

Since we have held plaintiff "substantially performed" the contract, in accordance with provisions of many previous decisions, the contract was performed by August 31, 1957. The final payment was therefore due September 10, 1957. Since it was not paid, plaintiff is entitled to interest from that date on the amount established in this decision.

The Minnesota Court has made a succinct statement of the interest situation in Knutson v. Lasher, supra, at page 606 of 219 Minn., page 696 of 18 N.W.2d, as follows: "The rule is that, where the amount due under a contract is certain and liquidated or capable of ascertainment, but is reduced by an unliquidated setoff, interest is allowable on the balance found to be due from the time it became due or suit was commenced."

In the instant case, by written agreement between the parties, it became due on September 10, 1957.

This court made the following observation in Banks v. Carrell, supra, where interest was computed from the date of the completion of the work. The court said (page 797 of 241 Iowa): "There is no dispute but that the work was completed by plaintiff on September 14, 1946. * * * More than three years had elapsed between the filing of the mechanic's lien and the judgment. A large part of the amount sued for was for wages paid employees and for materials furnished. To deny interest on such items for a period of over three years does not appeal to us as being equitable."

III. We hold there was substantial performance of the contract by plaintiff. There are only two items for which defendants should be given credit, as outlined in Division I: $60 which plaintiff admitted, and $136 which is obvious because of the contract provision and plaintiff's testimony. The trial court does not specify the items allowed on the counterclaim in the amount it fixed of $843. This amount is modified and established at $196. Judgment should, therefore, be entered and foreclosure of mechanic's lien decreed in the amount of $3258.13, together with statutory interest from September 10, 1957.

Counsel for appellant raised the question in oral argument that the court had wrongfully, as he contended, divided the costs in the District Court equally between the two parties. However, appellant did not raise this alleged error in his brief and argument, and under the rules of this court we cannot give the question consideration. Rule 344(a)4(Third), Rules of Civil Procedure.

Costs of appeal shall be taxed 20% to appellant and 80% to appellee.

The judgment and decree of the trial court is modified as heretofore stated, and subject to such modification is affirmed.— Modified, affirmed and remanded.

All JUSTICES concur.