E. D. HOLLON and Marjorie L. Hollon,
Appellants (Defendants),

v.

Gene McCOMB and Theo Jean McComb,
Appellees (Plaintiffs).

No. 5512.

Supreme Court of Wyoming.

Nov. 17, 1981.

H. Rick Hollon, Hollon & McLaughlin, Douglas, signed the brief and appeared in oral argument on behalf of appellants.

Jack R. Gage, Hanes, Gage & Burke, P. C., Cheyenne, signed the brief and appeared in oral argument on behalf of appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

The judgment from which this appeal arises held that appellants were entitled to foreclose on a mortgage given by appellees in connection with their purchase of a house. But, the judgment further ruled that the appellees could reduce the amount owed on the note by a setoff of their claim against the appellants for breach of warranty. The appellants have challenged that judgment on three bases. First, they contend that the trial court failed to impose upon the appellees the duty to mitigate damages. Second, they argue that the district court mistakenly allowed the setoff to be effective as of September 15, 1975 and by such action deprived appellants of the right to accrue interest on the amount of the setoff between the date it was allowed and the date of the judgment. Finally, appellants claim that the district court erred in denying their motion to file a supplemental pleading which asserted an additional cause of action based upon an alleged oral agreement to settle the lawsuit.

We will affirm.

On July 17, 1974, appellees, as buyers, entered into a purchase offer agreement with appellant E. D. Hollon, seller. Under the agreement, the purchase price for the house was $49,000.00. Of that amount, $40,000.00 was to be paid in cash by appellees—$35,000.00 of which was to come from the proceeds of a home loan, the other $5,000.00 from personal resources—and the remaining $9,000.00 was to be secured by a promissory note payable one year from the date of the note's execution by appellees, as makers, to appellants, as payees.

Appellees took possession of the home on August 7, 1974. At that time construction of the home had yet to be completed; however, appellants gave assurances that they planned to complete the house as soon as possible. Despite their assurances, the roof on the home remained unfinished. It was covered only with tar paper, it leaked, and sheets of it blew away. Besides the discomfort which resulted inside, this also gave the house a poor appearance from the outside.

Nearly a year after taking possession of the home, the appellees, impatient with the delay, employed a contractor, who constructed a new roof. According to the testimony of their expert, the old roof was inadequate to support the weight of either gravel or asphalt shingles, the alternative coverings originally planned. Thus he believed that a new roof with greater slope and strength was necessary. This roof was eventually completed with shakes rather than with gravel or asphalt shingles, and payment for the roof was made by appellees on September 15, 1975.

In April, 1979, appellee—Gene McComb—initiated this suit. In his complaint for breach of warranty he alleged that his home had not been timely completed in a good workmanlike manner by Hollon and that it had been necessary for him to hire someone else to complete it. He asked to be reimbursed for his expenses by cancellation of the note and release of the second mortgage. His wife, Marjorie L. Hollon, was later joined as a plaintiff.

In May, 1979, appellants filed an answer and a counterclaim. In it they alleged that the appellees had defaulted on the $9,000.00 promissory note due and payable August 9, 1975 and sought foreclosure of the mortgage given as security for the note.

Following the filing of the counterclaim, negotiations aimed at settling the matter were carried out. Based upon these negotiations, appellants filed a motion seeking to supplement their pleadings in order to make an additional counterclaim against appellees for breach of an oral agreement to settle the case. This motion was denied.

The matter proceeded to trial in November, 1980. Judgment was entered on January 13, 1981. It awarded appellees $6,998.96. It awarded appellants $9,000.00 plus interest at the rate of 8.75% per annum according to the instrument's terms from August 9, 1974 through November 29, 1980 for a total of $13,968.88. Upon motion of appellees, the district court modified its findings and judgment on March 30, 1981:

"3. The Court finds generally for the Plaintiffs and against the Defendants in the amount of Six Thousand Nine Hundred Ninety-eight Dollars and Ninety-six Cents ($6,998.96).

"4. That the promissory note alleged in the Complaint and Counterclaims was executed August 9, 1974, by Plaintiffs to Defendants, due one (1) year from date of execution, at a principal amount of Nine Thousand and no/100 Dollars ($9,000.00), with interest from date of execution until paid in full at the rate of 8¾% per annum.[1]

"5. That the Court finds generally for the Defendants and against the Plaintiffs on the Defendants' Counterclaims, in the amounts set forth herein.

"6. The Court finds for the Defendants and against the Plaintiffs in the amount of Nine Thousand Dollars ($9,000.00) plus interest at the rate of 8¾% from August 9, 1974 to September 15, 1975 for a total amount due September 15, 1975 of Nine

Thousand Eight Hundred Sixty-eight Dollars and Thirty-two Cents ($9,868.32).

"7. The Court finds that after set-off against the $9,868.32 in the amount $6,998.96, the Plaintiffs owed the Defendants Two Thousand Eight Hundred Sixty-nine Dollars and Thirty-six Cents ($2,869.36) which indebtedness bears interest at the rate of 8¾% from September 16, 1975 to November 29, 1980, for an accumulated interest of One Thousand Three Hundred Eleven Dollars ($1,311.00).

"8. The Court finds that the amount due the Defendants by the Plaintiffs on November 29, 1980 was Four Thousand One Hundred Eighty Dollars and Thirty-six Cents ($4,180.36).

"9. The Court further finds that the Defendants are entitled to recover of Plaintiffs reasonable attorney fees for foreclosure in the amount of One Thousand Dollars ($1,000.00), for a total Judgment due on November 29, 1980 of Five Thousand One Hundred Eighty Dollars and Thirty-six Cents ($5,180.36), said amount to bear interest at the rate of 10% per annum from November 30, 1980 until the Judgment is satisfied."

From the judgment resulting from the modified findings, appellants have perfected this appeal.

I

Appellants' first challenge to the district court's judgment concerns the well-established rule that an injured party has the duty to make reasonable efforts to avoid loss and minimize his damages. Appellants argue that the district court's award to appellees failed to impose upon appellees this duty to mitigate. Specifically, appellants contend that no additional work was required on the basic structure of the roof after appellees took possession. All that needed to be done was to cover the roof with asphalt shingles. This, appellants claim, would have cost approximately

---

1. The note was not produced as an exhibit in that it could not be found by appellants, but apparently the fact of its execution and terms were proved by the testimony and exhibits referring to it to the satisfaction of the trial judge.

$1,750.00. Accordingly, they argue that the additional work that appellees had done in building a completely new roof structure was unnecessary and should not be allowed to be set off from what appellees owe appellants.

■ Compensatory damages are awarded in order to compensate an individual for a loss suffered as a result of another's failure to perform some duty. They are designed to make the individual whole—that is to place him in the condition he would have been in if the other party had adequately performed the duty owed. The emphasis is on compensation not punishment. See *Campen v. Stone*, Wyo., 635 P.2d 1121 (1981), reh. denied.

■ Therefore, compensatory damages are awarded only to cover those losses which flow from the breach of a duty. Damages which are the product of a breach of duty by the injured party's failure to take reasonable steps to protect himself are not recoverable. *Thayer v. Smith*, Wyo., 380 P.2d 852 (1963).

■ It is important to note, however, that questions concerning whether an injured party has exercised reasonable care and diligence are for the trier of fact to decide. *Asbell Bros. Inc. v. Nash-Davis Machinery Company*, Wyo., 382 P.2d 57 (1963). Further, the party who has caused the injury in the first instance bears the burden of proof in demonstrating that the injured party failed to minimize his damages. *Goodwin v. Upper Crust of Wyoming, Inc.*, Wyo., 624 P.2d 1192 (1981); *Sturgeon v. Phifer*, Wyo., 390 P.2d 727 (1964).

■ As we have so often said, with regard to questions of fact, on appeal we must assume that the evidence in favor of the prevailing party is true and disregard the evidence of the unsuccessful party in conflict therewith. *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981). So long as there exists substantial evidence supporting the trier of facts' determination, we will not second guess it on appeal. *Distad v. Cubin*, Wyo., 633 P.2d 167 (1981). Here

appellees submitted evidence that the roof raftering and slope was inadequate to even support asphalt shingles and that a whole new roof was needed. They had been advised by a reputable builder that the roof should be rebuilt, and they followed his advice. Their expert testified that the advice they received was reasonable. We cannot in such circumstances pay heed to the conflicting testimony elicited from appellants' expert.

Whether appellees acted reasonably in having the roof rebuilt was clearly a question of fact. Substantial evidence supports the trial court's finding that the action taken was reasonable. The trial court only allowed appellees to take as a setoff the estimated cost of the new roof if asphalt shingles had been used rather than the shakes, because that is what appellees admitted they had expected and bargained for when they bought the home. Since no adequate challenge has been mounted to the trial court's conclusion that the defective roof was the fault of the appellants, we must uphold the award to the appellees.

## II

The second issue raised on appeal concerns the propriety of the district court's allowing the setoff as of September 15, 1975. Such a ruling reduced the principal upon which appellants could accrue interest and thereby reduced appellees' actual monetary liability.

The precise question raised here appears to be one of first impression though this court has dealt with cases involving the question of when prejudgment interest may be allowed. See *Goodwin v. Upper Crust of Wyoming, Inc.*, supra. The rule of law recognized in that case was that prejudgment interest may be allowed where a claim is considered liquidated—that is, the amount of the claim could have been readily determined by the obligor through simple mathematical computation. *Rissler & McMurry Co. v. Atlantic Richfield Co.*, Wyo., 559 P.2d 25 (1977). However, nothing was said in those cases about what happens when one party presents a liquidat-

ed claim while the other party seeks an offsetting unliquidated claim.

Appellants have tried to force fit the holdings of the other cases. They have argued that in this case their claim is liquidated under the definition of that term and thus prejudgment interest was properly awarded on it. On the other hand, the appellees' claim was not liquidated since the amount of it could not be computed prior to the trial court's judgment and accordingly no prejudgment interest could properly be granted on it. From this the assertion is made that by awarding appellees' claim as a setoff effective September 15, 1975, and reducing the principal upon which appellants could accrue interest, the district court has in effect awarded appellees prejudgment interest on their unliquidated claim. It is here that appellants' analysis fails. The district court did not award appellees prejudgment interest. What it did do was to deny appellants' prejudgment interest on that portion of their award that they should have expended on constructing appellees' roof, a proper credit on the note as of the date of payment for the roof.

Other jurisdictions have considered the issue raised here. In a recent Arizona case, *Fairway Builders, Inc. v. Malouf Towers Rental Co., Inc.*, 124 Ariz. 242, 603 P.2d 513 (1979), the question was whether it was proper to deny a party prejudgment interest on its liquidated claim where the opposing party had successfully asserted an unliquidated counterclaim. The court there ruled:

"* * * if the unliquidated counterclaim offsets are attributable to the same contracts which are the basis of the primary liquidated claims, those claims and the unliquidated counterclaims are offset and prejudgment interest is allowed only on the net difference. We stated this rule in *Homes & Son Construction Co., Inc. v. Bolo Corp.*, supra, 22 Ariz.App. [303] 306–7, 526 P.2d [1258] at 1261–2:

"'It appears to be the well-recognized rule that if the amount due under a contract is ascertainable, but is reduced by the existence of an unliquidated set-

off or counterclaim, attributable to the *contract*, interest is properly allowable on the balance found due from the due date. *Farrington v. Freeman*, 251 Iowa 18, 99 N.W.2d 388 (1959); *Fluor Corp. v. United States ex rel. Mosher Steel Co.*, 405 F.2d 823 (9th Cir.), cert. denied, 394 U.S. 1014, 89 S.Ct. 1632, 23 L.Ed.2d 40 (1969) (applying Arizona law); Annot., 89 A.L.R. 678 (1934).' "(Emphasis added). * * * " 603 P.2d at 537.

The Colorado Supreme Court has ruled similarly. In *York Plumbing and Heating Co. v. Groussman Investment Company*, 166 Colo. 382, 443 P.2d 986 (1968) the court held that an unliquidated claim should be set off against a liquidated claim prior to the computation of interest at least in those cases where the claims arise out of the same general transaction.

This approach appears not only to be the majority rule, but also the better one. A contractor should not be allowed to perform his obligations poorly, and thus force a purchaser to make expenditures correcting the shoddy work, and still collect interest on all the monies owed to him under the contract. Since the contractor should have expended the money the purchaser paid to repair the purchase, the contractor should not be entitled to prejudgment interest on that amount. The money the purchaser properly used to correct the defects in the contractor's work should be viewed as having been paid to the contractor, thus cancelling any debt up to that amount.

The district court here allowed prejudgment interest only on the net amount due following appellees' payment for the construction necessary to finish their roof. It simply would not make good sense to charge appellees interest on money they do not owe. This was proper, and accordingly we must affirm it.

### III

The final issue we are called upon to address concerns the district court's refusal to allow appellants' motion to file an addi-

tional counterclaim claiming an oral agreement for settlement of the lawsuit made about a year after service of appellants' answer and counterclaim, as a supplemental pleading. The appellants' motion was made pursuant to Rule 13(e), W.R.C.P., which provides:

"(e) *Counterclaim maturing or acquired after pleading.*—A claim which either matured or was acquired by the pleader after serving his pleading *may, with the permission of the court,* be presented as a counterclaim by supplemental pleading." (Emphasis added.)

The underscored language used in the rule indicates that the question of whether the motion to amend will be granted is within the discretion of the trial court. Federal courts have construed the identically worded federal counterpart to Rule 13(e) to that effect.[2] *Aviation Materials, Inc. v. Pinney,* 65 F.R.D. 357 (N.D.Okla.1975). The rule is concisely summarized in 6 Wright & Miller, Federal Practice and Procedure: Civil § 1428, pp. 148–149:

"A counterclaim may be asserted under Rule 13(e) only by leave of court, which usually will be granted in order to enable the parties to litigate all the claims that they have against each other at one time thereby avoiding multiple actions. However, Rule 13(e) is permissive in character. An after-acquired claim, even if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, need not be plead-

ed supplementally; the after-acquired claim is not considered a compulsory counterclaim under Rule 13(a) and a failure to interpose it will not bar its assertion in a later suit.[3]

"The decision to grant or deny a motion to serve a supplemental counterclaim is totally within the trial court's discretion. * * * *"

Therefore, we conclude that a motion made pursuant to Rule 13(e) is addressed to the complete discretion of the trial court; and we will not assume to interfere with or question its action.

Affirmed.

---

2. Rule 13(e), F.R.C.P.:

"(e) *Counterclaim Maturing or Acquired After Pleading.* A claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading."

3. We do not decide in this case that a second action is or is not barred. There is testimony in the transcript that appellee Gene McComb offered appellants "8,000 some dollars" but it was refused. The court did not permit any further questioning or development of the question presumably because of his denial of appellants' motion to amend their pleadings to claim a settlement and under the restrictions of Rule 408, W.R.E.:

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

This rule was called to the attention of the trial judge in a trial brief.