OZARK BLACK MARBLE COMPANY *v.* STEPHENSON.

4-7572                                     186 S. W. 2d 145

Opinion delivered March 19, 1945.

*Mills & Mills* and *Barber, Henry & Thurman,* for appellant.

*N. J. Henley* and *W. F. Reeves,* for appellee.

McHANEY, J. Appellant, a corporation, was incorporated January 30, 1939, and the other appellant, J. G. Cazort, was its moving spirit. On June 22, 1935, Cazort

and one Skinner, after some two years of search for deposits of black marble, and learning there was such a deposit on appellees' lands, called on them and examined same. They entered into a written contract with appellees on said date by which appellees agreed to give a "stone deed" to Ozark Black Marble Company, when organized, and Cazort and Skinner agreed to give appellees 25 shares of stock in the proposed corporation and to pay them $100 per acre for all land used in quarrying, etc., that the Ozark Company might take in its business operations.

Between that date and January 30, 1939, Cazort spent about $4,000 in testing, sawing, polishing samples, surveying and promotional work, and on the latter date appellees executed and delivered a "stone deed" to Cazort and Skinner to all the stone on the 128 acres on which they lived. The consideration recited was $100 cash, 150 shares of stock of the Ozark Company, and $100 per acre for each acre of land used or damaged. The Ozark Black Marble Company was incorporated the same day, and the 150 shares was issued and tendered to appellees, which was declined because appellees decided they wanted a ten per cent. royalty instead, and the royalty demand was agreed to. On August 31, 1939, appellees conveyed to the Ozark Company all the stone in an additional 132-acre tract adjoining their home place, and it in part furnishes the basis for a cross-appeal by appellees, but, in view of the disposition we make of the direct appeal, we think it unnecessary to discuss the facts relative to the second conveyance.

After August, 1939, appellants tried to put the marble on the market and to secure financing for the company. Cazort took several parties to see the property and appellees cooperated in every way to interest such parties in the marble deposits on their land. They knew of the efforts of appellants to get financial assistance from the R. F. C.

Cazort finally found a sale for some black marble in Joplin, Missouri, and in St. Louis, Missouri. Appellee Stephenson and his son, with other workmen, quarried

the marble and delivered it to the purchasers. It sold for $2.50 a cubic foot and enough was sold to bring in about $2,000, out of which all expenses of mining and hauling were paid, including ten per cent. royalty and Stephenson was paid for his time at the rate of $150 per month. In addition to the marble sold, Stephenson mined about 1,000 cubic feet of marble which was not sold and became worthless because exposed to the weather.

On February 29, 1944, appellees brought suit to cancel the two ''stone deeds'' heretofore mentioned on the ground that Cazort and Skinner misrepresented their financial ability; that they (appellees) were led to believe that Cazort and Skinner were financially able to procure machinery for such mining and to carry on the mining operations to get out and market the marble. They also sought judgment for $250 royalty on the marble mined and not sold and for damages to land used. The answer was a general denial.

Trial resulted in a decree cancelling the two ''stone deeds'' and a denial of any money judgment. This appeal followed and appellees cross-appealed.

We think the court erred in canceling the ''stone deeds'' to appellants. The ground alleged is misrepresentation as to the financial ability of the promoters. Skinner is now dead and it is undisputed that he had no financial standing. Cazort had been in good financial standing until he lost his fortune in the depression. At the time he negotiated this deal, he was a low-salaried clerk in the state Revenue Department and we think the evidence establishes the fact that appellees knew his condition. In any event, the evidence that he told them all about his financial ability is in sharp dispute. Appellees must have known that he was sending men there to examine the marble deposits with the view of interesting them in investing in the company, and it is undisputed that appellees knew of the attempt to secure financing from the R. F. C.

The rule in this state is that, in order to set aside the solemn recitals of the deed, duly signed and acknowl-

edged, the testimony must be clear, cogent and convincing, not by a mere preponderance thereof. One of the late cases so holding is *Stephens* v. *Keener,* 199 Ark. 1051, 137 S. W. 2d 253, and see, also, cases there cited.

We hold, therefore, that appellees' evidence did not measure up to this rule. Appellees cite and rely on such cases as *Mansfield Gas Co.* v. *Parkhill,* 114 Ark. 419, 169 S. W. 957, and *Standard Oil Co. of La.* v. *Giller,* 183 Ark. 776, 38 S. W. 2d 766, which hold that in an oil and gas lease, in which royalties constitute the chief consideration, there is an implied covenant to explore the leased property with reasonable diligence, and that failure to do so constitutes a breach of such covenant which entitles the lessor to a cancellation of the lease. But this action was not brought or tried on that theory. Misrepresentation as to financial ability was alleged and sought to be established, not that there was a breach of an implied covenant to develop. So these cases have no application. There is no express provision in said "stone deeds" requiring development.

Moreover, this seems to have been a cooperative business between the parties. As late as October and November, 1943, Stephenson quarried and delivered the last shipment to St. Louis and was promptly paid his labor bills and royalty. They worked together for nearly nine years, nearly four years before the corporation was formed. During all this time there was no complaint about Cazort's lack of financial ability. This country got into the war in December, 1941, and thereafter the building material business became progressively more restricted, a fact of which we take judicial notice, until in 1944 private construction was almost at an end, so that the market for black marble was gone for the time being, or until the end of the war. This fact is also shown by the evidence. It would, therefore, be inequitable to cancel the deeds at this time for failure to develop the property further especially in view of the fact that said "stone deeds" are outright conveyances of "all stone" under the respective tracts of land and there is no express provision therein requiring development work or quarrying

at any particular time. We hold, therefore, that the court erred in cancelling said deeds.

On the cross-appeal, it is urged that appellant should be required to pay $100 royalty on the 400 feet of marble quarried on Cazort's order and not sold, and also $65 for land damaged and not paid for.

As to the royalty claim the proof shows that it was not due and payable until the marble was sold and since this 400 feet was not sold and no showing of negligence in finding a purchaser, there is no royalty due appellants. The court correctly so found. On the claim for $65 for land damaged or taken, appellants concede that they owe appellees $100 for the 65 one hundredths of an acre instead of $65, on the theory that the taking or damaging of a fractional part of an acre renders them liable for a whole acre. Judgment will be rendered here against appellants for $100 on the cross-appeal.

On the direct appeal the decree is reversed and the cause remanded with directions to dismiss the complaint for cancellation as being without equity, subject to the right of appellees to bring another action to cancel for failure of appellants to use due diligence to further develop and market said black marble in changed economic circumstances. Costs in this court will be adjudged against appellees.