RICHARD R. LAUTENBACH, Appellee, v. LOREN K. MEREDITH et ux., Appellants.

No. 47399.

(Reported in 35 N. W. 2d 870)

February 8, 1949.

Siegers & Bedell, of Newton, for appellants.

Van Zante & Klyn, of Pella, for appellee.

Garfield, J.—Plaintiff as principal contractor brings this action in equity under chapter 572, Code, 1946, to enforce a mechanic's lien for material and labor furnished by him in the fall of 1947 in the construction of a new house on defendants' farm. Plaintiff's amended petition alleges he built the house under an oral contract to furnish all material, labor and supervision for which defendants agreed to pay on a basis of cost of all items furnished plus ten per cent for supervision and there is a balance owing of $5539.

Defendants' answer states that plaintiff orally agreed to build the house for $7000; he failed to furnish certain linoleum and an outside lamp and to erect and paint a fence and to do some other painting, all to defendants' damage in the sum of $140.87; defendants have paid plaintiff $6338.19 (plaintiff admits this); they have offered and now offer to pay plaintiff $520.94, the balance of the $7000.

The trial court's findings and decree seem to have been somewhat carelessly prepared and are not entirely clear. They allow plaintiff $4529.55 apparently as the balance due for cost of material and labor furnished. Plaintiff's claim for the ten per cent was denied for the reason he charged $1.65 an hour for his time on the work. It is admitted here the judgment

168

should be reduced $70.12 because the court incorrectly computed the amount due. Only defendants have appealed.

 It is true, as defendants argue, that since plaintiff has pleaded an express oral contract he cannot recover on an implied contract or upon quantum meruit. Maasdam v. Estate of Maasdam, 237 Iowa 877, 884, 24 N. W. 2d 316, 320, and citations; 17 C. J. S., Contracts, section 569a.

 There cannot be an express contract and an implied one relating to the same subject matter and covering all its terms. In such case the express contract would supersede the implied one. Maasdam v. Estate of Maasdam, supra, 237 Iowa 877, 887, 24 N. W. 2d 316, 321; 17 C. J. S., Contracts, section 5; 12 Am. Jur., Contracts, section 7. But there may be an implied contract on a point not covered by an express one. Maasdam v. Estate of Maasdam, supra, and citations.

Plaintiff had the burden to prove the contract declared upon by him. Economy Hog & Cattle Powder Co. v. Honett, 222 Iowa 894, 900, 270 N. W. 842; Olson v. Shuler, 203 Iowa 518, 521, 210 N. W. 453; 17 C. J. S., Contracts, section 579.

In argument each side has attempted to construe the findings of the trial court. Defendants contend and plaintiff denies they indicate recovery was allowed on the theory of implied contract. We shall not undertake to settle this difference of opinion. It is our duty to consider and determine the case anew. If the trial court reached the right result any error in its reasoning or findings is deemed not prejudicial and is of no avail to defendants here. Roth v. Headlee, 238 Iowa 1340, 1348, 29 N. W. 2d 923, 927, and citations.

The most important question in the case is one of fact, whether plaintiff agreed to build the house on a basis of cost plus ten per cent as contended by him or at a fixed price of $7000 as claimed by defendants.

Plaintiff, a carpenter at Pella for about fifty-six years, learned through a lumber dealer at Prairie City that defendants (two brothers) wanted a house built on their farm eighteen and one-half miles from Pella. Defendants met plaintiff and one Dingeman, who did excavating and cement work for plaintiff, at the farm on an evening in July 1947. Defendant Dr.

Meredith, who seems to have done most of the talking for defendants, brought with him a house plan obtained from the magazine Better Homes and Gardens and requested plaintiff to sketch some desired changes in the floor plan. This plaintiff agreed to do. Defendants say plaintiff was also asked at this meeting to figure the cost of the house.

Plaintiff took the plans with him and made the necessary changes in the floor plan. Defendants, plaintiff and Dingeman met again at the farm a few evenings later. The changes in the floor plan were satisfactory to defendants. Plaintiff, corroborated in the main by Dingeman, says Dr. Meredith asked plaintiff for an estimate as to the cost of the house and he replied he could not make one "the way prices were going up," he "wouldn't contract it at all," he never did contract a house, when pressed by Dr. Meredith for a rough estimate he told the doctor it would cost "all of $7000," he would build the house "just like Peters' plus ten per cent. That is customary, that is the way we have been building all of them." Dr. Meredith told plaintiff to go ahead. Plaintiff had recently built a house for Peters on a basis of cost plus ten per cent.

Defendants' version is that at the first meeting Dr. Meredith asked plaintiff to figure the cost of the house, at the second meeting (outdoors) plaintiff said he would build it for $7000, Dr. Meredith then went in the old house (which was to be replaced) and informed defendants' tenant and wife and the doctor's wife plaintiff would build the new house for $7000, they all then went outside and discussed with plaintiff and Dingeman as to whether the floors would be oak or pine, the kind of fireplace, the type of plaster, the make of furnace, the type of insulation, the plumbing, the septic tank, and perhaps other items. The doctor then asked whether the figure $7000 included all these things, plaintiff replied it would and defendants said to go ahead.

The tenant and wife and the doctor's wife all testify they heard plaintiff say the $7000 figure would include the items discussed. The tenant and wife (who were to occupy the new home) say they heard no discussion of building on a basis of cost or cost plus ten per cent. Defendants testify there was no

170

such discussion. Dr. Meredith admits that at the second meeting plaintiff said he would build the house "just like the Peters house" but says this followed the doctor's statement they wanted it well.built and he assumed plaintiff meant it would be a well-built house.

Notwithstanding the greater number of witnesses who testify for defendants we are inclined to accept plaintiff's version of the contract. The preponderance of the evidence does not depend on which side has the greater number of witnesses, especially where as here they are interested ones, although the number of witnesses is a matter to be considered. 32 C. J. S., Evidence, section 1022c; 20 Am. Jur., Evidence, section 1190; Garretson v. Harlan, 218 Iowa 1049, 1058, 256 N. W. 749; Brown v. Blanchard, 240 Iowa 123, 35 N. W. 2d 858. We regard plaintiff's version, under the circumstances here, much more probable.

It is a fact of common and general knowledge of which we may take judicial notice that construction costs were not stable but increased frequently during World War II and the period in controversy here. It seems probable in view of this fact that a contractor of plaintiff's knowledge and experience would decline to contract this house at a set figure, especially when it is shown beyond dispute it was customary to build houses on a "cost plus" basis and that is the way plaintiff had built some fifteen houses in the two years preceding the trial in June 1948.

Judicial notice has been taken that the arrangement of paying cost plus a percentage as a contract price for a completed job is growing in favor and is becoming a common plan adopted by contractors instead of a lump-sum payment. Economy Pumps v. F. W. Woolworth Co., 220 N. C. 499, 502, 17 S. E. 2d 639, 641, and citation. Also that the business of building houses for an agreed price is highly speculative. Randles v. Nickum & Kelly Sand & Gravel Co., 169 Or. 284, 288, 127 P. 2d 347, 349. See also as having some bearing Ozark Black Marble Co. v. Stephenson, 208 Ark. 338, 186 S. W. 2d 145, 146.

A duplicate of the Better Homes and Gardens plans furnished plaintiff is before us. It contains no specifications in the accepted sense and no such specifications were furnished plain-

tiff. There is nothing in the plans, for example, to show the grades of lumber to be used or many other details as to materials or methods of construction. The matters defendants say were discussed at the second meeting are only a small part of what would be embraced in specifications. According to defendants even these items were not discussed until after plaintiff had said he would build the house for $7000. It would be difficult if not impossible for plaintiff, from only the plans, to furnish more than the rough estimate he testifies he gave.

The fair inference is plaintiff had not before built a house from the plans used here. At least there is no evidence he had. Before the spring of 1947 he had not purchased any building materials from the Prairie City lumber company where he procured most of the materials for this house. (Dr. Meredith requested plaintiff to buy the lumber from this dealer.) Plaintiff procured no definite figures from the lumber dealer as to the cost of the material before he ordered it. It is improbable he would have agreed to build the house for a definite figure without first ascertaining from the dealer the cost of materials. If plaintiff had "contracted" the house he would naturally want to buy materials where he could obtain the best prices.

This house is not an ordinary farmhouse but contains many modern conveniences and expensive materials, including a septic tank and water system, bathroom, furnace, electric lights, fireplace, kitchen cabinets, door-length mirror, oak floors and birch trim, together with a picket fence. In order to build it plaintiff was required to drive himself and his employees thirty-seven miles each day to and from the farm. It is unlikely a builder with plaintiff's experience who apparently had plenty of work would agree to erect this house for a fixed sum less than two thirds its cost.

As previously stated, defendants allege plaintiff failed to complete the house in three respects and did not erect or paint the picket fence that was procured, all to defendants' damage in the sum of $140.87. Nothing was allowed plaintiff for these omitted items. It is argued that due to these omissions plaintiff did not substantially perform his contract and therefore is not entitled to recover more than the $520.94 defendants concede

is owing. We cannot accept the argument.

When the tenants moved into the house about Thanksgiving the linoleum had not been laid in the kitchen and bath, an outside lamp had not been procured, a picket fence had been obtained but not erected or painted and the outside trim had not been painted a second coat. Dr. Meredith arranged for the linoleum and it was laid at a cost for material and labor of $75.06. It is not shown when this was done. Dr. Meredith bought the lamp for $15.81 but it had not been installed. The doctor estimates $50 as the cost of erecting and painting the fence, painting the trim a second coat and installing the lamp. We find no evidence except Dr. Meredith's conclusion that the contract provided the outside trim was to be painted two coats.

Defendants contend there was not substantial performance of the contract which entitles plaintiff to recover because, it is said, these few omissions were not inadvertent or unintentional. It is true one accepted definition of substantial performance includes the statement the omissions or deviations from the contract must be inadvertent or unintentional. Littell v. Webster County, 152 Iowa 206, 215, 131 N. W. 691, 132 N. W. 426; Stratmeyer v. Hoyt, 189 Iowa 85, 90, 91, 174 N. W. 243; 17 C. J. S., Contracts, section 509, page 1090. The principal excuse given by plaintiff for not installing the outside lamp and erecting the fence is that it rained too hard the day he and his men went there to do the work.

Under the circumstances here it would be most inequitable to permit defendants to enjoy the benefits of the material and labor furnished by plaintiff and to relieve them from paying for the house because of these few comparatively unimportant omissions. The rule of law advanced by defendants does not require such a holding. Defendants were perhaps somewhat inconvenienced but were damaged little if any by these omissions.

There is no evidence it cost defendants more to buy the lamp or linoleum or to have the linoleum laid than if plaintiff had done so. Nor does it appear it will cost defendants more

to erect and paint the fence or paint the trim a second coat than if plaintiff had done the work. Generally equity is somewhat less strict than law in requiring performance by one who seeks to enforce a contract. See in support of our holding on this phase 12 Am. Jur., Contracts, section 343; Miller v. Gray, 205 Iowa 1305, 1307–1309, 217 N. W. 228, 229.

One other matter must be considered. The trial court entered judgment for $70.12 more than plaintiff's amended petition alleges is unpaid on the cost of materials and labor furnished. Defendants complain of this and, as previously indicated, plaintiff concedes the judgment should be reduced by this amount.

Defendants also contend plaintiff seeks to recover for the labor of four carpenters other than himself at $1.45 an hour while computations on his time sheets indicate two and probably three of the carpenters were paid only $1.25 an hour and the fourth but $1.15 an hour. It is also urged plaintiff seeks recovery for more hours than shown by these time sheets. We are unable to find, however, that plaintiff makes claim for more than the trifling total of two and one-half hours excess time for all his carpenters. But we must conclude plaintiff's total charge of about $1240 for these carpenters exceeds the cost of such labor by $203.82.

Plaintiff does not argue that by reason of the trial court's denial of his claim for the ten per cent an error was committed against him which he may urge here to offset, in a sense, the mistake of $70.12 in computing the amount of the judgment and the erroneous allowance of $203.82 more than the cost of the labor. Plaintiff might have advanced such an argument in an attempt to sustain the judgment. Kelley v. Creston Buick Sales Co., 239 Iowa 1236, 1238, 34 N. W. 2d 598, 600, and citation; Wentland v. Stewart, 236 Iowa 258, 261, 18 N. W. 2d 305, 306, and citations.

 Plaintiff's concession the judgment should be reduced $70.12 is wholly inconsistent with the argument we have just suggested might have been made. Although we review the case de novo we feel it would be unfair to defendants to affirm the judgment on the theory mentioned by us in the preceding para-

graph which plaintiff has not advanced and defendants were not called upon to meet. We therefore conclude the judgment should be reduced not only by $70.12, as conceded by plaintiff, but also by $203.82, leaving a balance plaintiff is entitled to recover of $4255.61. As thus modified the judgment is affirmed and the cause remanded for decree pursuant hereto. Costs in this court to be equally divided between plaintiff and defendants.— Modified, affirmed and remanded.

All Justices concur.