77 N.W.2d 475 (1956)
The S. D. & D. L. COTA PLASTERING COMPANY, Appellee.
v.
Richard L. MOORE and Mrs. Richard L Moore, Appellants.
No. 48917.
Supreme Court of Iowa.
June 19, 1956.
Walters, Bump & Jordan, Des Moines, for appellants.
Comfort & Comfort, Des Moines, for appellee.
THOMPSON, Justice.
The question in the case at bar concerns the rule of substantial performance of building contracts. Plaintiff is a corporation engaged in the business of plastering and applying prepared siding materials. It is the latter activity which is involved here. An oral contract between plaintiff and defendants stipulated that plaintiff should apply new siding composed of a preparation known as Quikbrik to defendants' home in Des Moines, at an agreed price. After the work was completed, defendants *476 paid $1,000 to apply upon the amount agreed; but later they refused to complete the payments, contending that the work had not been done in accordance with the contract. The major dispute concerns the color of the siding, which defendants say is not in accord with the agreement. There is also some evidence of cracks appearing in the finished job, but it seems clear these can be remedied without great expense, and the defendants do not seriously contend otherwise. These cracks are not defects serious enough to show a failure to comply substantially with the terms of the contract, and we shall devote no further attention to them.
I. It is the alleged failure of the Quikbrik preparation to comply with the agreement as to color which defendants say is fatal to any recovery by plaintiff. It is defendants' testimony that they selected the color from samples shown them by plaintiff, and plaintiff agreed to make the job conform to the shade selected. Plaintiff, through its agents S. D. Cota and D. L. Cota, who made the agreement on its behalf, say it was agreed the color should be "similar to the sample as possible." It is their testimony that it is generally impossible to make actual brick color exactly match the sample, and the same is true of paint.
Defendants say that the finished job did not match the sample chosen, No. 10, which was apparently a dark red. It is their contention that the color is not uniform, but is mottled; that white spots and discolorations appear, and that different shades appear at each point a new "batch" of the mixture was applied. The plaintiff, after complaint was made, attempted on two or three occasions to satisfy defendants by washing the house with a mixture containing muriatic acid, but defendants say the results were not permanent or satisfactory, and they now have a house whose color is not what they bargained for and is not pleasing to the eye.
Quikbrik is a preparation whose base is pulverized or ground brick. It is a "mix". Its use was new in Des Moines at the time, in the summer of 1952, that the agreement between the parties was made. Some weeks after the job had been completed, defendants paid by check $1,000 to apply upon the agreed price of $3,300; but later they refused to make further payments. The plaintiff also claimed $63.30 for extras and gave the defendants additional credits totalling $286.09; so that its statement for a mechanic's lien showed total charges of $3,363.30, less credits of $1,286.09, or a net alleged to be due of $2,077.21. The trial court found there had been substantial compliance with the contract, but that defendants were entitled to a deduction of $250 as the reasonable cost of repairing cracks and remedying discolorations; and to further credits of $150 and $25 for items not connected with the controversy involved in the litigation, or total deductions of $425. Foreclosure of plaintiff's mechanic's lien was decreed to make the sum of $1,652.21, with interest and costs.
II. Defendants say that the failure of the color schemethe alleged difference between the color chosen and that applied, with the discolorations and mottlingsshows a failure to comply with the substantial provisions of the contract; and that plaintiff, having predicated its action upon an express contract may not recover on quantum meruit. With this latter proposition we are in agreement. Lautenbach v. Meredith, 240 Iowa 166, 168, 35 N.W.2d 870, 871. But we think the trial court was correct in holding there had been substantial compliance. The question is largely factual. The rules governing substantial compliance with building contracts are well settled. In Hayes v. Ramsey, 205 Iowa 167, 169, 217 N.W. 808, 809, we quoted with approval from Littell v. Webster County, 152 Iowa 206, 215, 131 N.W. 691, 694, 132 N.W. 426:
" ` "Substantial performance," as defined by the cases, permits only such omissions or deviations from the contract as are inadvertent or unintentional, are not due to bad faith, do not impair the structure as a whole, are remediable without doing material damage to other parts of the building *477 in tearing down and reconstructing, and may without injustice be compensated for by deductions from the contract price. So much is allowed in building contracts because of the hardship to the contractor if slight, unintentional deviations should bar his recovery.'"
See also Stratmeyer v. Hoyt, 189 Iowa 85, 90, 91, 174 N.W. 243, 245. We cited with approval the rule as laid down in these cases in Huffman v. Hill, 245 Iowa 935, 938, 939, 65 N.W.2d 205, 206.
There can be no fair question that any deviations from the agreed color scheme here were unintentional and were not due to bad faith. There is no contention that they impair the structure as a whole, except in the matter of sightliness. The building performs its function of furnishing shelter and a home for defendants; they have the benefit of the improvement made by plaintiff, and if it were to be held there had not been substantial compliance they would have this without paying therefor, except for the sum of $1,000 and the credits of $286.09. Here it is somewhat significant that defendants do not ask for a return of these sums; yet if they are correct in their contention that plaintiff has failed to substantially comply with its contract, it would be no more entitled to retain these amounts paid than to recover those unpaid. The payment of the substantial amount of $1,000 without complaint or protest, several weeks after the completion of the work is also an indication that the defendants did not at that time consider the color defects extremely serious or irremediable.
It should be said that defendants claim also that the color rubs off upon contact; but this is denied and we think the source of the complaint is satisfactorily explained. Returning to the question of substantial compliance, we find that defendants' witness T. Floyd Sanders, a bricklayer, while telling of the discolorations, also said: "I would say that the job * * * is mechanically good * * *." He also testified: "I did not find anything wrong with the workmanship on this particular job except when it was washed* * * I would say as a Quikbrik job I would pass the job any time, mechanically." He also said that with ordinary brick the colors will vary "from what we call a cherry red to a red powder color. That is not unusual in brick."
Zygmunt S. Mayer, a witness for plaintiff, said that he had been in the Durabrick business for ten to fifteen years. Durabrick is a process similar to Quikbrik. He had had business dealings with the defendants, selling them aluminum doors and windows. He was familiar with their home, frequently going by it. He did not make a close examination of the house, but it looked all right to him. "The material and the seal is perfect, the cutting is all right. Passing by, I didn't see any unusual discoloration. No discoloring, some fading. They all fade. All my thirty applications had fading too. It fades a little bit but that is nothing unusual. * * * It is nothing abnormal there." This witness also said there is no color problem that cannot be corrected. In this connection, it should be noted that after plaintiff had attempted twice to comply with defendants' complaints about the color by washing it, further efforts along that line were forbidden.
The trial court, for the purpose of clearer understanding of the evidence and at the request of defendants, viewed the premises. Its conclusion, as expressed in its findings of fact, was that "the house, as it now appears, gives the appearance of a fair red brick job." It also noted some lighter spots, visible on close examination but found that these could be remedied. The court also found that Exhibit C, a photograph of the house in question taken after the completion of the work, is a fair representation of its appearance. We have examined this exhibit, and are unable to see any serious defects in that part of the house shown. The defendants counter the "fair red brick job" finding of the court by asserting they were entitled to something more, or at least different; that under their contract they were entitled to a specific shade of red, sample No. 10, and a "fair *478 red brick job" of a different shade is not a sufficient compliance. Passing this somewhat technical criticism, we think the matter is covered by the evidence as clarified by the court's view of the premises, and its finding of substantial compliance thereafter.
It was also noted by the trial court that the plaintiff had used the house, after the completion of the job and before this controversy arose, in its advertising for the purpose of securing additional Quikbrik business. An advertising sign was, by agreement with defendants, placed on their lot adjacent to the house, proclaiming to the world the virtues of Quikbrik as exemplified by defendants' home. Self-protection would have prevented this advertising by the plaintiff if the defects had been serious.
The defendants rely considerably upon Gosson v. Witt, 167 Iowa 247, 149 N.W. 274, and Connor v. Trapp, 127 Iowa 742, 104 N.W. 333. Both of these were well-drilling cases, and in each it was held there was not substantial compliance. They do not touch the point at issue here. In the Gosson case, the court said the pipe as inserted would furnish water for only a comparatively short time; and in Connor v. Trapp it appeared the well did not furnish good, clear water, which was required by the contract. The very object of the agreement was defeated in each case. Here, while appearance is of course important, all other purposes have been accomplished; and even as to the color, we agree there has been substantial compliance.
Our recent case of Huffman v. Hill, supra, contains much of interest in the case at bar. Following Lautenbach v. Meredith, supra, 240 Iowa 166, 172, 173, 35 N.W.2d 870, 874, we said, at page 938 of 245 Iowa, at page 206 of 65 N.W.2d: "`Generally equity is somewhat less strict than law in requiring performance by one who seeks to enforce a contract.'" Equity looks to the substance rather than the form, and seeks to prevent injustice. The rule of substantial performance is especially applicable to building construction or improvement contracts of this sort, because the builder's material and labor cannot be returned to him. The courts are forced to weigh, on the one hand, the harm to be done to the owner if he is forced to accept and pay for a job that is not the job he contracted for; on the other hand, the injustice to the builder and the unjust enrichment of the owner if trivial deviations from the contract are to deny the former any pay whatever and to permit the latter to keep the fruits of the builder's efforts and material without compensation. The contention that "It is so nominated in the bond" will not avail the owner whose property has been constructed or improved unless the deviation from the "bond" has been a material and substantial one.
We find no such defects shown in this record. The trial court made a fair allowance for correction of the cracks and whatever might be amiss with the color scheme. The familiar rule that we give weight to the findings of fact of the trial court where the evidence is in dispute, see Huffman v. Hill, supra, at page 938 of 245 Iowa, at page 206 of 65 N.W.2d, comes into play here. We think it particularly applicable under the circumstances of this case, where the major dispute concerns color and discoloration and the court had the opportunity to observe the house and so gain a much better understanding of the evidence than we could have. Its conclusions and judgment are in accord with the facts shown by the record. Affirmed.
All Justices concur.