WALTER PETERMAN, plaintiff-appellee and cross-appellant, v.
FRANK HARDENBERGH et ux., defendants-appellants and
cross-appellees.

No. 49581

(Reported in 97 N.W.2d 152)

JUNE 9, 1959.

Harold G. DeKay, of Atlantic, for defendants-appellants and cross-appellees.

Jones, Cambridge & Carl, of Atlantic, for plaintiff-appellee and cross-appellant.

LARSON, J.—This is an action in equity to recover $2490.08 as the amount due for extras furnished defendants by plaintiff building contractor in connection with the construction of a dwelling and garage for defendants under an oral contract, and to establish and foreclose his mechanic's lien in the sum of $1763.97. Defendants denied the indebtedness and filed a cross-petition claiming the sum of $4500 for plaintiff's failure to complete his contract and to perform the services in a workmanlike manner.

The trial court found plaintiff had established items due as extras in the sum of $1114.15, and that several items of work were not furnished nor completed, and reduced plaintiff's claim by $229. From a decree for plaintiff for $885.15 and the establishing and foreclosing of mechanic's lien therefor, defendants have appealed. Plaintiff's cross-appeal argues that the court failed to allow certain items clearly established by the evidence.

This case is in its simplest form. Only the original parties are involved, with no subcontractors nor subsequent ownership of the premises involved. There is no dispute as to the law. Only two propositions are urged by appellants: (1) That the plaintiff failed to establish his right to a mechanic's lien, and (2) that plaintiff failed to prove by a preponderance of the credible evidence the terms of the oral contract, or performance thereof, and that the items claimed as extras were not included in the contract but were required by defendants subsequent to the original oral agreement.

I. While our review is de novo (R. C. P. 334), we must give weight to the trial court's findings. The case involved almost entirely questions of fact, and the trial court, with the witnesses before it, was in a much better position to decide these questions than we with the cold record before us. Huffman v. Hill, 245 Iowa 935, 938, 65 N.W.2d 205; Bell v. Pierschbacher, 245 Iowa 436, 439, 62 N.W.2d 784, 786, and citations. The decision here largely rests on the credibility of the testimony.

II. The burden, of course, rests upon plaintiff to prove performance as well as the terms of the oral agreement declared upon by him. Huffman v. Hill, supra; Miller v. Gray, 205 Iowa 1305, 1307, 217 N.W. 228, 229; 57 C. J. S., Mechanics' Liens, section 308f, page 963; 36 Am. Jur., Mechanics' Liens, section 235, page 151.

However, as we pointed out in Huffman v. Hill, a technical, exact and perfect performance is not required nor necessary. If the terms of the contract are established by a preponderance of the credible evidence, and there is shown a substantial performance of its terms, the builder is entitled to the contract price plus extras, less reasonable sums for small items not furnished and reasonable damages on account of slight defects in performance. Lautenbach v. Meredith, 240 Iowa 166, 172, 173, 35 N.W.2d 870, 874. This is particularly true in equity suits, which are somewhat more liberal than actions at law. Littell v. Webster County, 152 Iowa 206, 215, 131 N.W. 691, 132 N.W. 426; Hayes v. Ramsey, 205 Iowa 167, 169, 217 N.W. 808, 809.

III. It would serve no useful purpose to consider each item involved herein and the evidence received in relation thereto. The parties agreed that sometime in the summer of 1954 they entered into an oral contract whereby plaintiff would build a brick dwelling and garage for defendants for the sum of $12,000. They do not agree as to its terms relating to the length of the dwelling, the material for the basement, and the material to be used on the kitchen and bathroom floors and on the roof. The trial court found plaintiff established his contention as to the original agreement on all but the basement material. We agree.

Plaintiff conceded he failed to lay the cement floor in the

garage, pay for the switch boxes and switches, put glass in the basement sash, and install a cement step inside the basement door, as agreed in the oral contract. His explanations relating to ground settlement, weather conditions, and oversight, were accepted by the trial court, and the proof as to the value of those items was properly considered in the deductions made by the court.

Defendants concede they asked for Fleetlite windows in place of wood ones, that they agreed to pay $200 more for that extra, and that they received a number of feet of soil pipe, gas pipe and water pipe as extras. Substantial evidence of this value appears in the record.

The disputed items related to (1) an alleged change in the length of the house from 38 feet to 40 feet, (2) a change from cement block basement to clay tile, (3) a change from 210 pound shingles to 300 pound shingles, (4) a change from vinyl tile to rubber tile on the floors of the bathroom and kitchen, and (5) a change from dry wall to colored plaster walls, and some other minor matters.

Plaintiff's evidence as to the terms of the original agreement consisted of his testimony, the working plan he drew of the proposed house, and the specifications and bill of material submitted to and figured for the job by Mr. Paul Haws, the manager of the Atlantic Building Supply Company, the testimony of Mr. Kenneth Beekman, a local contractor, Mr. Haws' testimony, and that of the party who did the cement work, Mr. Kenneth Martin. At least one witness testified the defendant Frank Hardenbergh had seen those specifications at the supply company office.

The specifications, plan, and bill of materials, Exhibit 4, call for a dwelling 28 feet by 38 feet in length, a cement block basement, a 210 pound shingle roof, dry interior walls, and wood millwork.

Defendants' evidence included testimony of Mr. and Mrs. Hardenbergh, Mr. Martin, and a valuation and building expert, Mr. Lyle Sabin, from Omaha, Nebraska.

It is defendants' contention that the evidence of faulty workmanship consisted of failure to install rafter collars, cap

walls leading from the basement door, install steps where needed, and other less evident errors.

The trial court found the length of the dwelling had been changed subsequent to the original agreement and allowed $11 per square foot as an extra, or the sum of $616; that the weight of the shingles had been changed increasing the cost $156.50; and that there had been a change in floor tile at an increased cost of $79.10. To this amount the court added the admitted sums of $200 for a change in millwork, and $62.55 for pipe furnished, making a total for extras of $1114.15 due plaintiff. It made no allowance for a change in material for basement walls.

In passing on defendants' claims the court said: "The court further finds that there remained work to be done which was provided by the contract, and finds under the evidence introduced that the value of said work remaining undone is in the sum of $229, which should be deducted from the amount of the extras in determining the amount yet due on the contract." It then granted plaintiff judgment in the sum of $885.15 together with interest at the rate of 5% from December 2, 1955, established the lien in that sum, and ordered a special execution against this property to satisfy the judgment and costs.

We have carefully reviewed the record and, although the trial court does not list the items it allowed defendants, it is apparent from the evidence that the principal items were the failure to pour the cement floor in the garage, the step into the basement, the cost of switches and switch boxes, basement window glazing, and the installation of roof louvers. Defendants' contention as to defective workmanship was rejected and, we think under the evidence, properly so.

Only two items pertaining to plaintiff's claim rejected by the trial court give us some concern. It would appear much of the testimony upon which the court allowed the additional house length and the heavier shingles as extras would apply to the change of material for the basement walls from cement blocks to clay tile, especially that shown on Exhibit 4. In the lien filed, plaintiff claimed $480 as an extra for this change, but, except for his statement as to when the change was made, he did not directly testify herein as to those increased costs.

The witness Mr. Haws' testimony, in light of Exhibits 4 and 8, would indicate an additional cost to the builder of some $654.44. It would appear, however, that the trial court had doubts as to when the change to clay tile was settled. It concluded, in view of the testimony of the defendants and Mr. Martin, who did the mason work, that the plaintiff failed to carry his burden to establish this item as a change made subsequent to the original agreement.

The other item which was changed, and for which no allowance was made as an extra, was the substitution of colored plaster walls for dry wall on the interior. Plaintiff claimed $208 for this alleged extra, but here again the testimony was in conflict, both as to the added cost and as to who requested the change. Defendants maintain they agreed plaintiff could make the choice, and that plaintiff's concern in obtaining capable workmen to tape and cement joints really brought about the change. In view of plaintiff's burden, we cannot under the evidence disagree with the trial court, although it seems obvious plastered walls are more costly than dry walls.

If we give the trial court's findings the weight to which they are entitled, we think the decree should be affirmed. It would not be especially helpful to consider and resolve here all the testimonial conflicts. It will suffice to say that on careful review we are content with the trial court's findings and conclusions thereon.

There was satisfactory evidence of a substantial performance of plaintiff's oral agreement to build the dwelling for defendants, and that certain extras were furnished at defendants' request of the reasonable value of $1114.15. The reasonable value of the work not done by plaintiff under the original agreement was shown to be $229 as concluded by the trial court. It being undisputed that defendants had paid the plaintiff the sum provided by the original agreement of $12,000, the plaintiff was therefore entitled to a judgment in the sum of $885.15 and for interest at 5% per annum from and after December 2, 1955.

IV.  The remaining proposition as to whether under the record plaintiff was entitled to his mechanic's lien was also correctly decided by the trial court. The defendants' sole contention in this regard is that plaintiff failed to "show by com-

petent evidence any substantial work on the premises, constituting a basis for the filing of his action within the time limit of two years and ninety days." The evidence disclosed and the trial court found plaintiff and his son had performed a total of eleven hours of labor on the premises on June 2, 1955. Although the plaintiff could not recall the specific tasks performed that day, he said, "we could have nailed on some bridging", a task often left to the end of the job.

That this was not a small or frivolous service rendered only for the purpose of making a timely filing of a mechanic's lien cannot be seriously questioned. The dwelling was started late in the fall and it was contemplated that several tasks be held over for better weather. That this delay was in good faith cannot be doubted. The garage floor was to await a settlement of a four-foot fill therein; the roof louvers were to await warm weather; and several inside items, such as a stair railing, were installed after defendants moved into the house. Then, too, when defendants paid plaintiff the balance of the $12,000 on or about May 3, 1955, plaintiff was told he would be paid for the extra service "when he finished the house."

We find herein no substantial evidence of bad faith on the part of plaintiff or of any obvious attempt by him to prolong the time for filing his mechanic's lien, such as the making of trifling or delayed charges, or making minor repairs or replacement of defective construction. Acts of this kind we have recognized as fatal to the establishment of such a lien. Casler Electric Co. v. Carlsen, 249 Iowa 289, 295, 86 N.W.2d 682, 686; Skemp v. Olansky, 249 Iowa 1, 9, 85 N.W.2d 580, 585; Nielson v. Buser, 207 Iowa 288, 291, 222 N.W. 856; Denniston & Partridge Co. v. Luther, 194 Iowa 464, 468, 469, 188 N.W. 664, 666; Milligan v. Zeller, 197 Iowa 79, 84, 85, 196 N.W. 793.

The rights of no third parties are involved, and as good faith services were rendered under the contract on June 2, 1955, this action commenced on May 18, 1957, was timely, and the judgment of the trial court must be affirmed.

Costs shall be assessed two thirds to defendants-appellants and one third to plaintiff-appellee.—Affirmed.

All Justices concur.