A AND R CONCRETE AND CONSTRUCTION COMPANY, INC., plaintiff-appellant, v. WILLIAM F. BRAKLOW et ux., defendants-cross-appellants, and DR. S. C. EVANS, defendant-appellee.

No. 50001.

(Reported in 103 N.W.2d 89)

AUGUST 2, 1960.

Clarence I. Spencer and C. L. Cram, both of Des Moines, for plaintiff-appellant.

Brody, Parker, Miller, Roberts & Thoma, of Des Moines, for defendants-cross-appellants and defendant-appellee.

LARSON, C. J.—Plaintiff A and R Concrete and Construction Company, Inc., contractor, brings this suit to enforce two separate mechanic's liens for material and labor furnished by it in the fall of 1958 in the remodeling of a building located at 2329 University Avenue in Des Moines. The defendants Braklows owned the property and the defendant Evans leased the first floor of the building. In Division I of plaintiff's petition it claimed the sum of $4273.05 with interest at five per cent per annum from the 8th day of December, 1958, for remodeling the building under an oral contract on a cost-plus basis. In Division II it claimed the sum of $3739.54 with interest at five per cent per annum from the 26th day of November, 1958, for interior remodeling under an oral contract on a cost-plus basis.

Both defendants answered admitting an oral contract was entered into between them and the plaintiff, but denied it was on a cost-plus basis and alleged it was for the performance of a job for a sum certain. The defendants Braklows contend the agreed price for their job, including extras, was $4311.87, upon which they had paid by cash and credit $3029, leaving a balance of $1282.87. They offered to confess judgment for $1500 plus accrued interest and costs to cover any overlooked extra items. Plaintiff refused the offer. The defendant Evans contended the agreed price for his job was $2080 plus extras of $125 and $424, or a total of $2629, upon which $1500 had been paid, leaving a balance of only $1129 due plaintiff. He also offered to confess judgment for $1500 plus accrued interest and costs to cover any overlooked extra items, but plaintiff also refused this offer. During the trial of the case it was stipulated by counsel that on the Braklow job, if the contract was determined to be on a cost-plus basis, the materials and services from suppliers amounted to $2609.03 and on the Evans job the sum of $1656.75.

There are two principal issues: (1) Were the oral con-

tracts, or either of them, entered on a cost-plus basis, or a sum certain basis plus extras; and (2) if on a cost-plus basis, were the labor charges claimed actual, just, and reasonable for the respective jobs? As usual in cases of this kind, the answer depends largely on the record facts.

After the trial court had carefully studied the testimony of the witnesses and weighed its credibility and studied the many exhibits, it well expressed the problem by stating that "a definite decision is difficult for many reasons, including the fact that the plaintiff company is a newly organized group with little experience in actually contracting * * *." It did conclude, however, that as to the Braklow job, based upon an estimate made by a third party and on which there were some "22 changes or additions" alleged, the express contract was on a cost-plus basis, but on the Evans job, where the items of improvement were comparatively simple, clear and express, and the negotations between the parties were had as to the quality and cost of the material to be used, the contract was for a sum certain plus extras which was later evaluated and agreed to by the parties. After carefully reviewing the record, we are satisfied that for the most part those determinations were correct.

I. Plaintiff in both divisions contends, as it must, that it established by a preponderance of the evidence an express verbal contract. Defendants, on the other hand, contend they each proved an express verbal contract as to the jobs specified and an implied one as to the extras furnished. Both cannot be correct, nor can there be an express contract and an implied one relating to the same subject matter and covering the same terms. Lautenbach v. Meredith, 240 Iowa 166, 168, 35 N.W.2d 870; Maasdam v. Estate of Maasdam, 237 Iowa 877, 889, 24 N.W.2d 316, 321; 17 C. J. S., Contracts, section 5; 12 Am. Jur., Contracts, section 7. But as pointed out in the above cases, there may be an implied contract on a point not covered by an express one, which could apply to extras furnished at defendants' request.

II. Of course it is plaintiff's burden to prove the contract declared upon by him. Lautenbach v. Meredith, supra; Peterman v. Hardenbergh, 250 Iowa 931, 933, 97 N.W.2d 152,

153; Economy Hog & Cattle Powder Co. v. Honett, 222 Iowa 894, 899, 270 N.W. 842; 17 C. J. S., Contracts, section 579a.

III. It is also true that while our review is de novo, we must give weight to the trial court's findings. The wisdom of that rule was never more applicable. As in most cases of its kind, this one involves almost entirely questions of fact and credibility, and the trial court with the witnesses before it was in a much better position to decide these questions than are we with only the exhibits and the cold record to aid us. Peterman v. Hardenbergh, supra; Huffman v. Hill, 245 Iowa 935, 938, 65 N.W.2d 205; Bell v. Pierschbacher, 245 Iowa 436, 439, 62 N.W.2d 784, 786, and citations; 57 C. J. S., Mechanics' Liens, section 308f, page 963; 36 Am. Jur., Mechanics' Liens, section 235, page 151. The decision here must rest largely upon the credibility of the testimony. On many vital questions involved there seems to be a complete disagreement as to what was or was not said by the parties at the time of the agreement. The only thing perfectly clear is that the work was done as required by the defendants, part payment was made, and some balance is owed plaintiff by each.

IV. While it would serve no useful purpose to relate all the testimony on the disputed issues, we note these pertinent facts. The defendants Braklows, owners of the property described in the lien known as 2329 University Avenue, Des Moines, residing on the second floor, leased the main floor of the building to the defendant Doctor Evans. Each agreed to do extensive remodeling, the Braklows structurally and on the outside, and Doctor Evans on the inside. Evans was to divide the single room 18 by 54 feet into professional facilities, or consultation rooms, for his own use. The Braklows asked a Mr. J. B. Tusant, a well-known and respected contractor, to look their job over and make an estimate of its cost. This he did, but declined to take the job as he was quitting the contracting business. He recommended plaintiff, just starting in the general contracting business. Together with an officer of the company, Mr. Alvin C. Carter, and an employee, Mr. Albert J. Daniels, he and the Braklows talked over the estimate he prepared, known herein as Exhibit C. Mr. Tusant considered Exhibit C only an estimate.

Tending to support plaintiff's claim of a cost-plus agreement, we find testimony that its representative Daniels told defendant Braklow that they could not give a firm bid on remodeling of an old building such as this one, for "you never know when you get into them old buildings what you are running into." As to Exhibit C, Mr. Daniels, in explaining his statement that he thought the estimate was figured strong, told Braklow, "If I can save you money, I will do it."

Exhibit C clearly provided for items of labor, material without specifying quality or grade, insurance, taxes, and profits. The last three items infer a cost-plus arrangement. Profit was figured at 15% of the cost of the whole job. Insurance, unemployment tax, and social security were figured at 9% of the labor cost. While the Braklows admittedly had the estimate overnight for study, they claim it did not alert them as to the cost-plus feature, but said they told plaintiff's representatives they had only so much money and required a firm bid or commitment.

It may be noted here that Mr. Braklow was present several times each workday and exercised considerable authority on what and how the work was to be done. Some 22 changes were made which required additional labor and material not figured in Exhibit C. Certainly the conduct of the parties must be considered, as well as the circumstances of the project, in deciding the issue involved herein. We are satisfied that by the preponderance of the evidence the agreement arrived at was on a cost-plus basis, and that Exhibit C, as plaintiff contends, was merely a rough estimate and not the basis of a firm bid.

██ ██ In this connection we said in Lautenbach v. Meredith, supra, at page 170 of 240 Iowa: "Judicial notice has been taken that the arrangement of paying cost plus a percentage as a contract price for a completed job is growing in favor and is becoming a common plan adopted by contractors instead of a lump-sum payment." (Citing cases) Following the reasoning in that case we may now say it seems most probable, in view of this fact, that a contractor, aware of this trend, would decline a contract at a set figure to remodel an old building whose condition was unknown. Firm bids on new projects with

adequate plans and specifications being considered unwise by contractors, this job accepted on a firm basis would surely have been foolhardy. While the evidence is not too clear and satisfactory, we think under the circumstances the contract or agreement most probable was on a cost-plus basis, and that each party should have so considered it. Lautenbach v. Meredith, supra.

Plaintiff complains of the trial court's refusal to allow all of its claim for labor in the Braklow matter. The court reduced the labor claim for $2596.12 to $1709.16. We shall not attempt to review the evidence as to labor costs. All of plaintiff's employees, with the exception of some unskilled labor, kept their own time, and both Mr. Carter and Mr. Ralph Winebrenner seem to have charged considerable supervisory time to this job. There was also evidence that time was charged for one employee who had gone fishing. In other words, the trial court, with justification, felt the 1253 man-hours of labor on this relatively small remodeling job in about two months time indicated some mistakes and error, and found that plaintiff had failed to establish by a preponderance of the credible evidence such reasonable labor charges on this project. It would seem the trial court was right in holding that the charges of Carter and Winebrenner and Mrs. Winebrenner must be general expenses of the corporation and not actual on-the-job duties performed and chargeable under a cost-plus basis. We are satisfied the trial court's adjustment for labor was justified and agree with it. Added to the labor cost must be 9% for insurance, the F.I.C.A. tax, and the Iowa Employment Tax, or $228.43, and as per stipulation the materials cost $2609.03, making a total of $4546.62. To this must be added 15% for profit, which made the total claim of $5228.61. Credits of $2200 cash paid by the Braklows plus $829 paid by the owners to the Carr Glass & Paint Company, who furnished and installed the glass front for the building, leaves a balance due of $2199.61.

V. Turning now to the second project involving Doctor Evans, we note first of all that the circumstances surrounding the oral agreement between the parties was quite different from those in the Braklow matter. Here again the testimony of the

parties is at great variance. The plaintiff contends that at no time did it quote defendant Evans a firm bid, but insists that it proposed taking the work on the same cost-plus basis in effect in the Braklow job. However, it must be conceded there were no similar uncertainties or complexities evident in this project.

The single large room 18 by 54 feet was to be partitioned off into small offices or rooms adaptable to Doctor Evans' professional needs. Only dry walls, a ceiling, doors, and trim were included, except for a brick-faced planter at the entrance. A second project of installing two small windows in an outside wall was considered separately.

When plaintiff contacted Doctor Evans and asked for this work, the doctor prepared a floor plan, Exhibit 1, showing where the partitions were to be installed, where the planter was to be built near the entrance, and where the outside windows were to be installed. After discussing the plan including details as to the material to be used, Doctor Evans claims a bid of $2300 was submitted by Carter and an employee Gates in the presence of Dr. M. H. Newgard, who corroborated his claim. Evans said the offer was rejected as "too high for dry wall construction." Doctor Evans also testified he told them that the material they had specified for mahogany was prime grade, that they should "refigure with a cheaper grade of mahogany", that later the same day in the presence of Doctor Vaughn, Mr. Carter gave him a revised bid of $2080, which was accepted, and that he offered to make full payment at that time. He also claimed he accepted a bid of "$125.00 for both windows." Doctor Vaughn was not available and did not testify.

While plaintiff denies making any bid on this project, we noted Mr. Daniels admitted he quoted a figure of $200 a window "approximately" for the window installations.

It is true there were also no plans and specifications on this job with the exception of Exhibit 1, but here there was no such inference to aid plaintiff due to the uncertainty of the work or labor involved. It was a simple job of placing partitions, hanging doors, trimming, and other finish work. Only the window installation involved any uncertainty, and there the proposal

was amended to eliminate the openings to be made below the windows for air conditioners. The trial court heard the witnesses and came to the conclusion that in this matter plaintiff failed to establish a cost-plus agreement. We concur in that conclusion.

From the record it appears that several changes or alterations were made at Doctor Evans' request, and of course for these he must pay extra. This he does not deny. The remaining question is how much.

The trial court considered testimony as to the installation of a mahogany door twice rehung, a changed entranceway and steps, including the building of a brick wall instead of a brick planter, the adding of a mahogany paneled wall, the change from sheet rock on three walls to mahogany panels, the addition of two sheet rock walls in the bathroom, one in the dark room, and two small walls in the closet. It did not attempt to figure these extras under a cost-plus basis, or other implied agreement. It preferred to accept the statement of total cost of the job of $2300.55 allegedly made by plaintiff's representative in connection with the submission of a bill, Exhibit 8, to Doctor Evans about November 1, 1958. At that time the job was not complete, but Evans said Carter told him it was finished except that a man was needed " 'there for another week and a half to trim around the doors.' " Evans stated he asked Carter about the statement, Exhibit 8, noted that the amount due already was over the bid, and warned him that all additional charges had better be revealed because plaintiff might not be paid any additional money if they were not. He said Carter assured him " 'no, everything is taken care of.' "

While the trial court may have considered such testimony and Exhibit 8 in the nature of an account stated, we do not feel the preponderance of the evidence supports such a conclusion, for considerable testimony concerning the extras required disclosed they were of a very substantial nature. Considerable labor as well as material in the form of brick and paneling were necessary to comply with changes requested by Evans. Even if Exhibit 8 only disclosed $2300.55 due, it was figured on a cost-plus arrangement not in effect here, and clearly did not go

beyond October 30, 1958. On its face it was not an account stated, even to that date.

It is our conclusion that the sum of $424, plus the allowed $125 for the window installation, is not sufficient to cover the changes and additions required, and while such items are difficult to figure in the record, we believe $300 must be added for increased material and labor costs, and that the sum due under the express and implied agreement with Doctor Evans is $1429. Judgment is rendered accordingly. In this connection we found no conclusive evidence in the record that $125 was the bid for each or for both outside windows installed in the old brick wall, but assume it was intended for both.

The costs of each party up to the time of the offer to confess judgment for $1500 were correctly taxed to defendants, and the costs of the trial below were properly taxed one half to the defendants William F. Braklow and Carole M. Braklow and one half to the plaintiff. This is not changed by our conclusion, for defendant Evans' offer to confess judgment for $1500 is still over the amount found due plaintiff.

Under the stipulation of the parties the judgment against William F. Braklow and Carole M. Braklow in the sum of $2199.61 shall bear interest at 5% per annum from the 1st of March, 1959, and the judgment against defendant Dr. S. C. Evans in the sum of $1429 shall also bear interest at 5% per annum from the 1st day of March, 1959. Costs of this appeal are to be taxed 50% to appellant, 25% to defendants-cross-appellants, and 25% to defendant-appellee.

As so modified, the judgment of the trial court is affirmed. —Modified and affirmed.

GARFIELD, HAYS, THOMPSON, PETERSON, GARRETT, and THORNTON, JJ., concur.

OLIVER, J., not sitting.