Arnold J. WELTER and John J. Welter, d/b/a John P. Welter Sons, Appellees,

v.

Bert HEER and Ruth Heer, husband and wife, Appellants,

and

Dubuque Bank and Trust Company, Dubuque, Iowa, Defendant.

No. 53932.

Supreme Court of Iowa.

Nov. 10, 1970.

Hughes & McKay, Dubuque, for appellants.

O'Connor, Thomas, Wright, Hammer & Bertsch, Dubuque, for appellees.

LeGRAND, Justice.

This is a suit in equity to foreclose a mechanic's lien for work performed in improving the residence of Bert Heer and Ruth Heer in Dubuque County, Iowa. The trial court entered judgment in favor of plaintiffs for $4403.46 and established that amount as a lien against the property in question. Mr. and Mrs. Heer appeal, and we affirm.

The Dubuque Bank and Trust Company was made a party defendant because it held a mortgage on the property. The trial court's decree held the mechanic's lien to be superior to the bank's mortgage. The bank has not appealed, and our consideration here is limited to the controversy between plaintiffs and the Heers, to whom we refer hereafter as the defendants.

Prior to the events giving rise to this dispute, defendants' home was a story-and-a-half frame dwelling without a basement. It had three rooms downstairs and one upstairs. Defendants desired to enlarge and improve their property and negotiated with plaintiffs, who were partners operating a contracting business, toward that end. These negotiations extended over two or three meetings. On at least one occasion the plaintiff, Arnold J. Welter, visited the premises while Bert Heer pointed out generally what he wanted done.

This included raising the house, which was then sitting on timbers; excavating for a basement and installing a basement under the raised house; putting an extension on the rear of the building; putting a dormer on the left side of the house; installing a new bathroom upstairs and enlarging the half-a-story area there; utilizing part of the present kitchen for a downstairs bathroom and remodeling the remainder of the kitchen; putting a new roof on the main structure; and changing the location of several windows and doors in various parts of the house.

■ It is conceded the parties entered into an oral contract for the performance of this work. Plaintiffs allege such an agreement in Division I of their petition; defendants admit it in their answer. The parties are bound by these pleadings. Grantham v. Potthoff-Rosene Co., 257 Iowa 224, 230, 131 N.W.2d 256, 259; Johnson v. Scott, 258 Iowa 1267, 1272, 142 N.W. 2d 460, 463. Furthermore defendants admitted such an arrangement in their testimony, and the trial court quite properly found an oral contract existed.

The difficulty arises because this oral agreement left undecided many of the terms under which that work was to be performed. Nothing was reduced to writing. There were no plans or specifications. The type, kind, and quality of materials were left open. New rooms were provided for without discussion as to size. The per hour charge for labor was undetermined. As the case is presented on this appeal, we must simply decide as best we can from the record the basis upon which the plaintiffs should be paid for the work they admittedly did.

■ We have held on several occasions under similar circumstances that a contract may be express as to some terms and implied as to others. It cannot be both as to the *same* terms. Here the parties agreed that certain work should be done, but settled little else. If it was a time-and-material contract without agreement as to

rate of compensation, the law implies a promise to pay the reasonable value of the services rendered. Maasdam v. Estate of Maasdam, 237 Iowa 877, 887, 24 N.W.2d 316, 321; Sitzler v. Peck (Iowa), 162 N.W. 2d 449, 451; Carlson v. Maughmer (Iowa), 168 N.W.2d 802, 803.

Before work was started plaintiffs refused to take the job on a contract basis and the parties agreed on a time-and-material job. This much is undisputed, and herein lies the heart of this lawsuit. Defendants insist plaintiffs agreed to do the work (except the garage and porch addition) on a time-and-material basis with a ceiling of $9500.00, "a little more, a little less." Defendants, on the other hand, say the job was to be a straight time-and-material and that the $9500.00 figure was only a "rough estimate." When defendants decided later to add a garage and porch, the $9500.-00 total was raised to $12,500.00; but this does not help the basic difference between the parties. The quarrel is still over the meaning of the oral agreement they admit was made.

Work was started on August 27, 1966. Plaintiffs themselves did most of it. Some was put out to subcontractors, and plaintiffs also used two of their own employees for part of the job. The project continued until February 14, 1967, when defendants discharged plaintiffs under circumstances we discuss later. At that time it is agreed the remodeling was not finished, although there is dispute as to how much remained to be done.

Plaintiffs had previously submitted bills to defendants for $9001.26 for work completed to November 1, 1966. Work was then still going on and defendants were there to observe its day-to-day progress. On or about February 14, 1967, plaintiffs presented a bill for $4403.46. At the time defendants made no protest and agreed to pay that amount as soon as possible. However, defendants testified they were "pretty shook up" when this bill was presented. Upon reflection they decided it was excessive, re-

fused to pay, and ordered the work stopped. The situation on February 14, 1967, then, was simply that defendants found themselves obligated to pay $13,404.72 ($9001.26 already paid plus a bill for $4403.46) for an unfinished job which they claim was to have cost only $12,500.00 when completed.

Even though several other objections are raised by defendants, it is apparent their principal complaint centers around the fact their house is still unfinished. The record shows it will cost between $2000.00 and $4000.00 to complete the job.

Defendants rely on the following propositions for reversal: (1) error by the trial court in finding the oral agreement was a straight time-and-material contract; (2) error by the trial court in finding the plaintiffs had proven the full sum they demanded was, in fact, due; and (3) error by the trial court in several material findings of fact prejudicial to defendants.

I. We dispose of the third proposition summarily by stating we have examined the record and find no merit in the claim that the trial court made material mistakes in its findings of fact. We disregard this claim except as it inheres in our discussion of the other two propositions relied on.

II. The remaining propositions really raise only a single issue, the one we referred to earlier. Our determination of this case depends upon a resolution of this problem: was the oral agreement a time-and-material contract; or was it an agreement to do the work within a fixed amount except for the variation allowable under the term "a little over, a little under"?

This appeal is de novo; we give weight to the findings of the trial court but are not bound by them. Rule 344(f) (7), Rules of Civil Procedure. In cases like this the questions to be decided are almost entirely factual.

Before reaching the matter we feel is determinative of this case, we briefly mention and discard some of the side issues raised. Defendants assert they were dissatisfied with much of plaintiffs' work; that they were "too slow"; that they "argued all the time on the job"; that other carpenters could have completed the work in fewer hours; and that the work was not done in a workmanlike manner. Under the record here there is no substance to these complaints, which perhaps is best shown by the fact that they were not made until this litigation started. Although defendants were present every day while the work was being done, they admitted they made no objections at any time. On the contrary, they expressed satisfaction with the work on several occasions. We agree with the trial court that there is no support in the record for this criticism as to the duration or quality of the work.

This brings us to the vital issue between the parties—the type of agreement they entered into. From a careful review of the record and from a consideration of all the circumstances, including the findings of the trial court, we are constrained to hold that plaintiffs' version is the correct one and must be sustained.

We reach this conclusion for the same reasons discussed in Lautenbach v. Meredith, 240 Iowa 166, 170, 35 N.W.2d 870, 872, 873; A and R Concrete & Construction Co., Inc. v. Braklow, 251 Iowa 1067, 1072, 103 N.W.2d 89, 92, whose facts are strikingly similar to the present case. In those decisions we took judicial notice of the fact that "cost plus" contracts were becoming more and more common with contractors, particularly on jobs involving the remodeling of old property.

The circumstances looked upon as significant in those cases are even stronger here. The work was done without plans or specifications; no bids from subcontractors were obtained; prices for material were not verified. We find it implausible that an experienced contractor would give defendants a firm figure, especially since plaintiffs had already refused to take the

job on a contract price. Yet what defendants claim would be very little different from a fixed price, the very position plaintiffs had steadfastly avoided. What actually happened here demonstrates why contractors are reluctant to take such work for a contract price. Not only were many of the details which would normally determine price originally left undecided, but after the work started, changes, alterations, and substitutions were effected. Some were substantial; some minor—but all would have direct bearing on the ultimate price of the job. Furthermore unanticipated structural difficulties appeared when the upstairs work was underway. Something of this sort invariably occurs to plague those who undertake the remodeling of old property. As we noted in the Lautenbach case (240 Iowa at page 170, 35 N.W.2d at page 873), it would be "difficult if not impossible * * * to furnish more than [a] rough estimate" when faced with such circumstances—circumstances, we might add, which exist in virtually every such situation.

We have examined the record carefully and can find no evidence which justifies the result defendants urge nor which convinces us the trial court was wrong. We agree this was an oral contract to remodel defendants' house on a time-and-material basis.

III. Having reached this conclusion, we consider briefly the charges made by plaintiffs. As already noted, plaintiffs are entitled to the reasonable value of the services they rendered. The proof establishes that the material was billed to defendants at cost plus ten percent for plaintiffs' profit. This is conceded to be proper, even by defendants' expert witness. Labor was charged to defendants at the prevailing rate plus a mark-up to cover overhead and contractor's profit. For the work performed by the two plaintiffs, the hourly charge was $6.00. For the other workers it was less. Defendants' expert witness not only testified this was reasonable but said they could have charged fifty cents per hour

more. Defendants claim the formula used by plaintiff to fix their labor charge is in direct conflict with their testimony. We find no merit in this argument.

We hold the evidence supports plaintiffs' contention that the contract was a time-and-material agreement, and further that the amounts charged for both material and labor were reasonable and proper.

We therefore affirm the judgment of the trial court.

Affirmed.

All Justices concur except BECKER, J., who takes no part.